RECORD NO. 16-1410

In The

# United States Court of Appeals

### For The Fourth Circuit

## GILBERT LLP,

*Appellant*,

v.

## TIRE ENGINEERING AND DISTRIBUTION, LLC, d/b/a Alpha Tyre Systems, d/b/a Alpha Mining Systems, a Florida Limited Liability Corporation; JORDAN FISHMAN, an individual; BEARCAT TIRE ARL, LLC, d/b/a Alpha Tire Systems, d/b/a Alpha Mining Systems, a Florida Limited Liability Company; BCATCO A.R.L., INCORPORATED, a Jersey Channels Islands Corporation,

*Plaintiffs– Appellees*,

and

**SHANDONG LINGLONG RUBBER COMPANY, LTD., a foreign company; SHANDONG LINGLONG TIRE COMPANY, LTD., f/k/a Zhaoyuan Leo Rubber Products Company, Ltd., a foreign company; AL DOBOWI, LTD., a foreign limited liability company; AL DOBOWI TYRE COMPANY, LLC, a foreign limited liability company; AL DOBOWI GROUP, a foreign corporation; TYREX INTERNATIONAL, LTD., a foreign limited liability company based in Dubai; TYREX INTERNATIONAL RUBBER COMPANY, LTD., a foreign corporation; QINGDAO TYREX TRADING COMPANY, LTD., a foreign corporation; SURENDER S. KANDHARI, an individual,**

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

━━━━━━━━━━

**BRIEF OF APPELLANT**

━━━━━━━━━━

**Richard D. Shore**
**GILBERT LLP**
**1100 New York Avenue, NW, Suite 700**
**Washington, DC 20005**
**(202) 772-2317**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1410__        Caption: __Gilbert LLP v. Tire Eng'g & Distrib. LLC, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Gilbert LLP_____
(name of party/amicus)

_____

who is _____the Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                           ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                              ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _Richard Jun_          Date: ___04/28/2016___

Counsel for: Gilbert LLP

## CERTIFICATE OF SERVICE
***************************

I certify that on ___04/28/2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_Richard Jun_
(signature)

___04/28/2016___
(date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES ....................................................................1

STATEMENT OF CASE ........................................................................5

SUMMARY OF ARGUMENT ..............................................................14

STANDARD OF REVIEW ....................................................................19

ARGUMENT ..........................................................................................21

  I. The District Court Committed Legal Error By Failing To
    Comply With This Court's Directives On Remand ...........................21

    A. The District Court Failed To Comply With This Court's
      Directive To Award An Amount "Much Larger" Than
      Gilbert LLP's Hourly-Basis Fee Due To The Contingent
      Fee Arrangement ......................................................................21

    B. The District Court's Bases For Refusing To Enhance The
      Fee Award Due To The Contingent Nature Of The Fee
      Arrangement Were Considered And Rejected By This
      Court........................................................................................22

      1. Gilbert LLP's Termination After The $26.63
        Million Judgment It Secured But Prior To
        Recovery Does Not Justify The Failure To
        Enhance The Fee Award................................................22

      2. The Fee Agreement Does Not Justify Ignoring
        This Court's Directive ...................................................24

i

C.    The District Court Failed To Comply With This Court's Directive To Take Into Account The $26.63 Million Judgment Secured By Gilbert LLP ............................................. 26

D.    The District Court Committed Legal Error By Relying On Fee-Shifting Standards ........................................................ 28

E.    The District Court's Refusal To Consider Evidence Essential To Proper Application Of The *Campbell County* Factors Was Based On Erroneous Legal Standards ................................................................................... 32

1.    The Court Committed Legal Error By Failing To Treat As Binding Judicial Admissions Alpha Statements In The Fee-Shifting Petition That Gilbert LLP's Hourly-Basis Fee Were Reasonable ....... 32

2.    The District Court Committed Legal Error By Refusing To Consider Evidence Highlighted Or Submitted By Gilbert LLP Following Vacatur ............. 36

3.    The District Court Committed Legal Error By Declining To Accept Unrebutted Evidence .................... 38

II.    The District Court Committed Legal Error Or At The Very Least Abused Its Discretion By Adopting The Same Lodestar As Before And Making No Adjustment For The *Campbell County* Factors .................................................................................... 41

A.    The District Court's Fee Determination Is Contrary To Voluminous, Uncontroverted Evidence Supplied By Gilbert LLP Regarding The Proper Lodestar And The Appropriate Impact Of The *Campbell County* Factors ............. 42

B.    The Undisputed Evidence In The Record And Alpha's Judicial Admissions Mandate A Materially Higher Fee Award ....................................................................................... 49

ii

CONCLUSION ....................................................................................................52

REQUEST FOR ORAL ARGUMENT ................................................................52

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abramson ex rel. Estate of Abramson v. Laneko Eng'g Co.*,
    370 F. Supp. 2d 498 (S.D. W. Va. 2005) ....................................................43

*Adams v. Mathis*,
    752 F.2d 553 (11th Cir. 1985) .......................................................39

*Am. Modern Home Ins. Co. v. Corra*,
    No. 6:06-CV-01015, 2009 WL 3424226 (S.D. W. Va. Oct. 22, 2009) ........37

*Appleton v. Bondurant & Appleton, P.C.*,
    No. 04-1106, 68 Va. Cir. 208 (Va. Cir. Ct. 2005).........................................50

*Baltimore Luggage Co. v. Samsonite Corp.*,
    727 F. Supp. 202 (D. Md. 1989)....................................................37

*Black Grievance Comm. v. Philadelphia Elec. Co.*,
    802 F.2d 648 (3d Cir. 1986), *vacated on other grounds*,
    483 U.S. 1015 (1987)....................................................39

*Boston Firefighters Union Local 718 v. Boston Chapter NAACP, Inc.*,
    468 U.S. 1206 (1984)....................................................37

*Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*,
    519 F. App'x 657 (11th Cir. 2013)...............................................29

*Campbell County v. Howard*,
    112 S.E. 876 (Va. 1922) ...............................................*passim*

*Cliff Simmons Roofing, Inc. v. Cash*,
    No. CH99-17308, 1999 WL 370247 (Va. Cir. Ct. June 4, 1999) ................25

*Duvall v. Colvin*,
    No. 5:11-577-RMG, 2013 WL 5506081 (D.S.C. Sept. 30, 2013) ...............43

*In re Abrams & Abrams, P.A.*,
605 F.3d 238 (4th Cir. 2010) .................................................................28, 45

*In re Continental Illinois Securities Litigation*,
962 F.2d 566 (7th Cir. 1992) ..........................................................30, 31, 47

*In re McNallen*,
62 F.3d 619 (4th Cir. 1995) .........................................................................34

*In re Microstrategy, Inc. Sec. Litig.*,
172 F. Supp. 2d 778 (E.D. Va. 2001) ..........................................................43

*Jerry Parks Equip. Co. v. Southeast Equip. Co.*,
817 F.2d 340 (5th Cir. 1987) .......................................................................35

*Kidd v. CSX Transp.*,
No. 89-0899, 1990 WL 518125 (W.D. Va. Oct. 9, 1990)......................43, 50

*King v. McCord*,
707 F.2d 466 (11th Cir. 1983) .....................................................................39

*Lillie v. United States*,
953 F.2d 1188 (10th Cir. 1992) ...................................................................39

*Lowe v. Mid-Atl. Coca-Cola Bottling Co.*,
33 Va. Cir. 361 (Va. Cir. Ct. 1994) .............................................................21

*Melvin v. Colvin*,
No. 5:10-CV-160-FL, 2013 WL 3340490 (E.D.N.C. July 2, 2013) ............43

*Meyer v. Berkshire Life Ins. Co.*,
372 F.3d 261 (4th Cir. 2004) .......................................................................34

*MiTile, Ltd. v. Hasbro, Inc.*,
No. 1:13-cv-451, 2013 U.S. Dist. LEXIS 143926
(E.D. Va. Oct. 3, 2013)..........................................................................42, 43

*Mullins v. Richlands Nat'l Bank*,
403 S.E.2d 334 (Va. 1991) ..........................................................................35

*NAACP v. City of Evergreen, Ala.*,
    812 F.2d 1332 (11th Cir. 1987) .............................................................. 38-39

*Old Dominion Transp. Co. v. Hamilton*,
    131 S.E. 850 (Va. 1926) ........................................................................27

*Pickett v. Sheridan Health Care Center*,
    664 F.3d 632 (7th Cir. 2011) ........................................................39

*Pitchford v. Oakwood Mobile Homes, Inc.*,
    124 F. Supp. 2d 958 (W.D. Va. 2000).........................................25

*Rum Creek Coal Sales, Inc. v. Caperton*,
    31 F.3d 169 (4th Cir. 1994) ......................................................20, 31, 45, 47

*S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*,
    356 F.3d 576 (4th Cir. 2004) ......................................................20

*Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*,
    652 So. 2d 366 (Fla. 1995) ................................................... 29-30

*Statewide Reapportionment Advisory Comm. v. Beasley*,
    99 F.3d 134 (4th Cir. 1996) ........................................................37

*Tanenbaum v. Agri-Capital, Inc.*,
    885 F.2d 464 (8th Cir. 1989) ......................................................35

*United Food & Commercial Workers, Local 400 v. Marval Poultry Co.*,
    876 F.2d 346 (4th Cir. 1989) .............................................19, 20

*United States v. Ayres*,
    76 U.S. 608 (1869)......................................................................37

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950)......................................................................37

*Venegas v. Mitchell*,
    495 U.S. 82 (1990)......................................................................30

*VIA Design Architects PC v. U.S. Dev. Co., LLC*,
    No. 2:13-cv-555, 2014 WL 5685550 (E.D. Va. Nov. 4, 2014)...............34, 35

*Vienna Metro v. Pulte Home Corp.*,
    No. 1:10-cv-00502, 2011 U.S. Dist. LEXIS 158648
    (E.D. Va. Aug. 24, 2011).......................................................................*passim*

*Willis v. Wells Fargo Bank, N.A.*,
    No. 2:11-cv-193, 2012 WL 112942 (E.D. Va. Jan. 12, 2012) .....................34

*Zeneca Ltd. v. Novopharm Ltd.*,
    919 F. Supp. 193 (D. Md. 1996)..................................................................37

## STATUTES

28 U.S.C. § 1291.........................................................................................1

28 U.S.C. § 1332(a) ....................................................................................1

## RULE

Fed. R. Evid. 201 .......................................................................................39

## OTHER AUTHORITY

Restatement (Third) of Law Governing Lawyers § 39A cmt. A (2000) .................30

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Virginia had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), because diversity of citizenship existed and the amount in controversy exceeded the jurisdictional minimum of $75,000.00.

The district court's April 7, 2016, order determining the value of Gilbert LLP's lien for attorneys' fees, costs, and expenses was a final, appealable order. Gilbert LLP timely filed a notice of appeal on April 8, 2016. Accordingly, this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

This is the second appeal concerning Appellant Gilbert LLP's entitlement to attorneys' fees resulting from its representation of Appellee Alpha in this case on a contingency fee basis.[1] Gilbert LLP secured a $26.63 million judgment in favor of Alpha and conducted extensive post-trial work on Alpha's behalf, including drafting Alpha's response to the defendants' unsuccessful appeal and laying the groundwork for collections. During this post-trial work, the Gilbert LLP partners supervising the case left to form their own firm, Weisbrod Matteis & Copley PLLC

---

[1] "Alpha" refers to Plaintiffs-Appellees Jordan Fishman and three companies he owns and controls: Tire Engineering and Distribution, LLC; Bearcat Tire ARL, LLC; and Bcatco A.R.L., Inc. These companies do business as Alpha Tire Systems or Alpha Mining Systems.

("WM&C").  Alpha elected to retain WM&C on a similar contingency fee basis

and terminated Gilbert LLP without cause.

Gilbert LLP asserted a lien to secure its entitlement to attorneys' fees, costs,

and expenses.[2]  In 2014, the district court valued Gilbert LLP's fee lien at

$1,237,720, a fraction of its hourly-basis fees.  The district court reached this result

by deeply discounting Gilbert LLP's hours and hourly rates in a lodestar

calculation and declining to apply any enhancement to the lodestar based on the

factors set forth in *Campbell County v. Howard*, 112 S.E. 876 (Va. 1922).  On

appeal, this Court ruled that a law firm discharged without cause from a

contingency fee arrangement—such as Gilbert LLP here—is entitled in *quantum*

*meruit* to a fee "much larger" than its hourly-basis fees (referring to this as a

"recognized rule").  The Court stated that under "the particular circumstances of

this case," the contingent nature of Gilbert LLP's fee arrangement should have

been a "significant factor" in the *quantum meruit* analysis.  The Court also ruled

that the district court must take into account the $26.63 million judgment that

Gilbert LLP had secured.  And, concerning the proper hourly rates to be used, the

Court "remind[ed] the district court that this is not a fee-shifting case (like those

cited in its opinion)" and that it must consider the *Campbell County* factors.  In

light of these rulings, the Court vacated the district court's initial ruling and

---

[2] Costs and expenses are not at issue in this second appeal.

2

remanded with express instructions to take into account the contingent nature of Gilbert LLP's representation of Alpha, the $26.63 million judgment Gilbert LLP had secured on behalf of Alpha, and the other *Campbell County* factors. On remand, however, the district court declined to increase the fee award beyond the deeply discounted lodestar and again valued Gilbert LLP's fee lien at $1,237,720. In doing so, the district court relied on arguments that had been rejected by the Court when it ruled in favor of Gilbert LLP in the prior appeal.

The issues presented are as follows:

1)    Did the district court commit legal error or abuse its discretion when on remand it valued Gilbert LLP's lien at the same amount as before the vacatur, when it had awarded a deeply discounted hours times rates lodestar, despite this Court's instructions that (a) the contingent nature of the representation entitles Gilbert LLP to an award "much larger" than its hourly-basis fees, (b) the $26.63 million judgment Gilbert LLP secured is significant in determining an appropriate *quantum meruit* fee, and (c) all the other *Campbell County* factors must be applied?

2)    Did the district court commit legal error or abuse its discretion when, in determining a "reasonable" hourly rate for its lodestar calculation, it (a) used rates based on fee-shifting cases although this Court had specifically noted that "this is not a fee-shifting case," and (b) significantly reduced Gilbert LLP's actual

3

hourly rates even though, among other factors, Alpha had previously admitted the reasonableness of the rates, essentially the same hourly rates have been determined to be the prevailing local rates in other cases in the Eastern District of Virginia, other evidence proffered by Gilbert LLP supported the reasonableness of the rates, and there was no evidence in the record supporting the lower rates applied by the district court?

     3)    Did the district court commit legal error or abuse its discretion when, on remand where this Court had vacated the district court's prior order, it refused to consider substantial uncontroverted evidence, including judicial admissions by Alpha and declaration testimony by its counsel, and fact and expert affidavits, establishing among other things (a) reasonable hours and rates for purposes of determining an appropriate lodestar, and (b) the appropriate adjustment to account for the contingent nature of the representation and the $26.63 million judgment secured, two of the *Campbell County* factors this Court specifically directed the district court to apply?

     4)    Did the district court commit legal error or abuse its discretion when on remand it failed to adopt a substantially higher lodestar and to apply a significant multiplier to that lodestar, or to value the fee lien at a substantial share of Alpha's recovery, to reflect among other factors this Court's prior ruling,

4

Alpha's judicial admissions and declaration testimony by its counsel, and other uncontroverted factual evidence and expert testimony?

**STATEMENT OF CASE**

This appeal arises out the district court's failure, on remand from this Court's ruling in favor of Gilbert LLP's initial appeal, to follow the Court's directives on how to value Gilbert LLP's fee lien against Alpha. The fee dispute that led to both of Gilbert LLP's appeals arose out of Gilbert LLP's successful representation of Alpha on a contingency fee basis in this case. J.A. 334. The relevant facts are set forth below.[3]

In August 2009, Alpha retained Gilbert LLP (then named Gilbert Oshinsky LLP) to pursue claims for misappropriation, theft, and unauthorized use of Alpha's trade secrets, designs, and other intellectual property by a former employee of Alpha and several foreign companies (the defendants in this case). J.A. 358. The defendants were represented by large national law firms.[4] Gilbert LLP's fee agreement with Alpha provided for a 40% contingency fee (plus reimbursement of costs and expenses should Alpha recover). J.A. 360.

---

[3] Gilbert LLP also incorporates by reference its briefs in the prior appeal. *See* Br. of Appellant, *Gilbert LLP v. Tire Eng'g & Distrib., LLC*, No. 14-2192 (4th Cir. Mar. 16, 2015), ECF No. 14 ("Appellant Br."); Reply Br. of Appellant, *Gilbert LLP v. Tire Eng'g & Distrib., LLC*, No. 14-2192 (4th Cir. May 5, 2015), ECF No. 25 ("Appellant Reply").

[4] Defendants were represented by Bracewell & Guiliani, Holland & Knight, and Morgan Lewis & Bockius. J.A. 2–7.

Gilbert LLP represented Alpha from the outset of the case.  In July 2010, Gilbert LLP secured a $26.63 million verdict in favor of Alpha following extensive, hard-fought litigation and a jury trial.  J.A. 41.  Gilbert LLP also handled post-trial motions, did most of the work in responding to the defendants' unsuccessful appeal, and laid the groundwork for collection efforts.  J.A. 347, 365. Gilbert LLP incurred approximately $4.1 million in hourly-basis fees during its representation of Alpha.  S.J.A. 916–1031.

August Matteis Jr. and William Copley were the partners at Gilbert LLP who worked most heavily on Alpha's case.  J.A. 354.  Mr. Matteis was the lead litigation counsel for Alpha and was the Gilbert LLP partner charged with primary responsibility for the litigation work on the case.  J.A. 354.  Mr. Matteis and Mr. Copley recorded, and supervised others who recorded, the time entries for work performed.  J.A. 354–55.

In or around October 2011, after the appeal had been fully briefed by Gilbert LLP but before oral argument, Mr. Matteis and Mr. Copley left Gilbert LLP to form WM&C.  J.A. 354.  Alpha elected to retain this new firm and terminated Gilbert LLP's engagement without cause.  J.A. 338.  WM&C has refused to disclose the specifics of its fee agreement with Alpha, but Gilbert LLP understands that WM&C has a similar 40% contingency fee agreement to that of Gilbert LLP. J.A. 355.

6

WM&C argued the appeal and pursued collection efforts on the $26.63 million judgment secured by Gilbert LLP. J.A. 347. WM&C recovered approximately $500,000 in garnishment proceedings—about two percent of the judgment. J.A. 226. Alpha reached a settlement with one defendant for $15.5 million in 2013 and with the other defendants in 2015 for an amount it has declined to disclose notwithstanding Gilbert LLP's fee lien on the proceeds. *See* J.A. 471. Based on a 40% contingency fee, the total amount of fees Alpha currently owes to its past and present attorneys exceeds $6.4 million (40% of the recoveries whose amounts have been disclosed). J.A. 347. Indeed, the total fees Alpha is obligated to pay very likely substantially exceed this $6.4 million amount when the 2015 settlement is taken into account.

On January 27, 2012, Gilbert LLP asserted a lien in this case to secure its entitlement to attorneys' fees, costs, and expenses. J.A. 216. On November 22, 2013, Alpha, represented by WM&C, filed in the district court a Motion to Determine Value of Gilbert LLP's Lien for Attorneys' Fees and Costs (the "Motion"). J.A. 79.

In the memorandum in support of its Motion, Alpha, through WM&C, contended that Gilbert LLP was entitled to only roughly a third of its hourly-basis fees: $1.39 million out of more than $4.1 million. J.A. 241–42. In arguing for this result, WM&C asserted that Gilbert LLP's work, which WM&C partners Mr.

7

Matteis and Mr. Copley had supervised and largely performed while they were at Gilbert LLP, was "duplicative, inefficient, and excessive."  J.A. 241.  WM&C also alleged that there was a "lack of detail in certain [time] entries" (including Mr. Matteis's and Mr. Copley's own entries) and that the firm's hourly rates (including those of Mr. Matteis and Mr. Copley) were "[u]nreasonably [h]igh."  J.A. 238, 241.  Alpha and WM&C made these assertions even though in a prior fee-shifting motion that Alpha had filed against the defendants in the case seeking fees under the Lanham Act (the "Fee-Shifting Petition"), Alpha had contended and Mr. Matteis had testified by declaration that Gilbert LLP's hours and rates in this matter were reasonable.  J.A. 194–95.

Following briefing and argument, the district court valued Gilbert LLP's fee lien at $1,237,720—millions of dollars less than either Gilbert LLP's hourly-basis fees or an appropriate share of the contingency fee reflecting Gilbert LLP's contributions to the case, and less even than WM&C had urged was appropriate. J.A. 466.  The district court reached this amount based solely on a fee-shifting-type lodestar calculation that dramatically reduced Gilbert LLP's hours and hourly rates.  After determining the lodestar, the district court held that "[n]o further adjustment, upward or downward, is warranted by application of the [*Campbell County*] factors," even though Gilbert LLP had handled the case on a contingency fee basis from inception through hard-fought litigation and a full-blown jury trial

8

resulting in a successful $26.63 million judgment.  J.A. 461.  Under the district court's initial ruling, WM&C stood to receive more than four times as much as Gilbert LLP based on the proceeds of the garnishment proceedings and first settlement ($5.18 million), and potentially millions of dollars more based on the 2015 settlement (up to $4.23 million), for arguing the appeal and pursuing collection efforts on the judgment Gilbert LLP had secured.  J.A. 347–48.  In other words, under the district court's initial ruling, Gilbert LLP would receive less than $1.24 million in fees, and WM&C would receive between $5.18 million and $9.41 million.  Gilbert LLP timely appealed the district court's ruling.  J.A. 468.

On appeal, this Court ruled in favor of Gilbert LLP, vacating the district court's initial ruling and remanding to the district court with specific instructions concerning the proper manner in which to determine a *quantum meruit* fee in the circumstances.  As noted above, the Court ruled that under *Campbell County*, a law firm discharged without cause from a contingency fee arrangement is entitled in *quantum meruit* to an award "much larger" than its hourly-basis fee.  App. Op. at 10 (quotation omitted).  The Court described this as "a recognized rule."  *Id.* (quotation omitted).  Despite Alpha's contention that failure to collect on the judgment prior to termination precluded a contingency-based enhancement, the Court stated that under "the particular circumstances of this case," the contingent nature of Gilbert LLP's fee arrangement should have been a "significant factor" in

9

the *quantum meruit* analysis. *Id.* at 9. The Court similarly rejected Alpha's argument that a contingency-based enhancement was precluded by the fee agreement between Alpha and Gilbert LLP. *Id.* at 7. The Court also ruled that the district court must take into account the $26.63 million judgment that Gilbert LLP had secured. *Id.* at 10. Similarly, the Court expressly noted that, under *Campbell County*, evidence as to the "skill and experience called for" and the attorneys' "standing in their profession" is essential to any analysis of an appropriate hourly rate in *quantum meruit*," and that "[t]hese factors suggest that when a litigant *selects* a firm with higher rates, that firm may be entitled to a larger fee in *quantum meruit* (depending, of course, on the balance of all the factors)." *Id.* at 10–11 n.4 (quotation omitted). Regarding hourly rates, the Court also "remind[ed] the district court that this is not a fee-shifting case (like those cited in its opinion)." *Id.* The Court vacated the district court's initial ruling and remanded with express instructions to take into account the *Campbell County* factors. *Id.* at 10.

On remand, the district court ordered Gilbert LLP and Alpha "to file supplemental briefs that *clearly apply* the tests elucidated by the Fourth Circuit." J.A. 473–74 (emphasis added). In their Supplemental Brief in Support of Plaintiffs' Motion to Determine Value of Gilbert LLP's Lien for Attorneys' Fees and Costs, Alpha, still represented by WM&C, argued that (a) the district court's initial ruling was correct, (b) the Court's discussion of the applicability of specific

10

*Campbell County* factors was mere "suggest[ion] in dicta," and (c) the district court should simply "show its work" by describing the rationale for its prior award without any re-examination of that award. J.A. 480–81. Alpha repeated many of the arguments that this Court had rejected on appeal and urged the district court to retain the same fee result despite this Court's directives regarding the *Campbell County* factors. J.A. 480–81. For instance, Alpha argued that the only "result secured" by Gilbert LLP was "zero recovery" and that "it is unclear whether this factor even applies to a law firm discharged prior to any recovery." J.A. 481, 498. Alpha also complained that Gilbert LLP had "failed entirely" to offer evidence in support of its hourly rates. J.A. 494. Notwithstanding that this Court had vacated the district court's initial order and had instructed the district court to apply the *Campbell County* factors, and despite the district court's instructions to "apply the tests elucidated by the Fourth Circuit," J.A. 474, Alpha elected not to submit any additional evidence supporting the outcome it sought.

In its response Brief Regarding the Value of its Lien for Fees and Costs, Gilbert LLP provided a detailed discussion of how to apply properly this Court's ruling and supported that discussion with substantial uncontroverted evidence, including judicial admissions by Alpha and declaration testimony by its counsel in the Fee-Shifting Petition, and fact and expert affidavits, establishing among other things (a) reasonable hours and rates for purposes of determining an appropriate

11

lodestar amount, and (b) the appropriate adjustment to account for the contingent

nature of the representation and the $26.63 million judgment secured.

Gilbert LLP also reduced by over 4,000 hours the time used for its lodestar

calculation, retaining only time entries that were either (a) identified as reasonable

and appropriate in Alpha's Fee-Shifting Petition and Mr. Matteis's accompanying

declaration, or (b) not challenged by Alpha as excessive, duplicative, or otherwise

inappropriate in Alpha's subsequent list of challenges to specific Gilbert LLP time

entries.  Gilbert LLP partner Craig Litherland provided a detailed declaration that,

among other things, specifically identified the time entries used in Gilbert LLP's

reduced lodestar calculation.  J.A. 539–555; S.J.A. 1026–1081.  Due to these

reductions, Gilbert LLP now seeks a lodestar amount only with respect to 6,745.5

hours, totaling $3,118,595 (before enhancements to reflect the *Campbell County*

factors).  Gilbert LLP also submitted extensive evidence, including expert

affidavits, bearing on the proper calculation of the lodestar and application of the

*Campbell County* factors, so as to "apply the tests elucidated by the Fourth

Circuit," as the district court requested.  J.A. 474.

Following oral argument, the district court issued a new Memorandum

Opinion and Order, again valuing Gilbert LLP's fee lien at $1,237,720—precisely

the same amount as in its initial ruling.  J.A. 733–62.  The district court refused to

adjust the award to reflect the contingent nature of the representation or the $26.63

12

million judgment secured. The district court's main bases for concluding that these factors were irrelevant here were that (a) Gilbert LLP was terminated before there had been recoveries on the judgment it secured, (b) the fee agreement between Gilbert LLP and Alpha allegedly provided that Gilbert LLP would be entitled only to its hourly fees in the event of termination under the circumstances here, and (c) the result secured was relevant only insofar as it reflected Gilbert LLP's efficiency. Alpha had specifically argued each of these points in the prior appeal, but this Court rejected the arguments, holding that (a) Gilbert LLP was entitled to a fee "much larger" than its hourly fees because the representation was contingent and Gilbert LLP had secured a $26.63 million judgment, notwithstanding that Gilbert LLP was discharged without cause before recovery, and (b) the fee agreement was inoperative because Gilbert LLP was discharged without cause and its fee must be determined based on *quantum meruit* (as both Alpha and Gilbert LLP agreed, and as the district court previously had concluded). Thus, the district court found these two *Campbell County* factors irrelevant to Gilbert LLP's fee lien even though this Court had specifically identified them as "central to the *quantum meruit* analysis *in this case*." J.A. 741 (emphasis added).

The unrebutted evidence submitted or identified by Gilbert LLP that the district court declined to consider demonstrated, among other things, that (a) Alpha had previously admitted that the hours and rates that Gilbert LLP now seeks

13

(resulting in a lodestar of approximately $3.1 million) are reasonable, and

(b) substantial expert analysis and testimony demonstrates that a multiplier of at

least two times the lodestar is appropriate under the *Campbell County* factors.

Additionally, in determining reasonable hourly rates, the district court again

specifically looked to cases "in the fee-shifting context," even though this Court

had "remind[ed] the district court that this is not a fee-shifting case (like those

cited in its opinion)." J.A. 742; Op. at 10 n.4, *Gilbert LLP v. Tire Eng'g &

Distrib., LLC*, No. 14-2192 (4th Cir. Jan. 11, 2016), ECF No. 33 ("App. Op.").

The district court refused to consider substantial uncontroverted evidence

submitted by Gilbert LLP that its hourly rates were reasonable, instead relying on

its own unspecified "knowledge of the case and litigation generally," J.A. 752,

notwithstanding this Court's instructions on remand to provide sufficient

information to allow the Court to review meaningfully the district court's fee

determination.

Gilbert LLP timely filed this appeal from the district court's second ruling.

J.A. 764.

## **SUMMARY OF ARGUMENT**

The district court committed legal error by failing to comply with this

Court's directives on remand following the prior appeal. Contrary to this Court's

express instructions, the district court failed to treat the contingent nature of the fee

14

arrangement as a relevant factor in its *quantum meruit* analysis entitling Gilbert LLP to a fee "much larger" than its hourly-basis fees. The district court similarly failed to treat the $26.63 million judgment secured as a relevant factor in its *quantum meruit* analysis, entitling Gilbert LLP to an enhancement of the lodestar. On the contrary, the district court gave no weight at all to these factors.

In the prior appeal, Alpha argued that the district court properly gave no weight to these factors because there had been no collections on the judgment Gilbert LLP had secured when the firm was terminated, because Gilbert LLP's work was allegedly "inefficient," and because the concededly unenforceable fee agreement between Alpha and Gilbert LLP allegedly precluded a contingency fee on amounts recovered more than a year after Gilbert LLP was terminated. In reversing the district court's ruling, this Court rejected these and Alpha's other arguments. Yet on remand to the district court, Alpha described this Court's rulings as to these specific *Campbell County* factors as mere "dicta," reiterated the same arguments this Court had rejected, and asserted that all the Court required was that the district court explain its prior decision. The district court adopted the rationale urged by Alpha, disregarding the directives and guidance this Court had provided. The district court also committed a number of other legal errors, and abused its discretion, in calculating its dramatically-reduced lodestar fee.

First, the district court committed legal error by relying on fee-shifting cases to calculate the *quantum meruit* value of Gilbert LLP's services.  Consistent with well-established Supreme Court precedent, this Court expressly reminded the district court that fee-shifting standards are not applicable here.  The district court's insistence on relying on such cases to determine Gilbert LLP's hourly rates and compensable hours despite this Court's directives constitutes reversible legal error.

Second, the district court committed legal error by refusing to recognize that Alpha's statements in connection with the prior Fee-Shifting Petition that Gilbert LLP's hours and rates were reasonable were binding judicial admissions fully applicable here.  The district court improperly concluded that the statements were not binding because it had rejected them in ruling on the Fee-Shifting Petition and because it viewed them as legal conclusions.  Both points are incorrect.  There is no requirement that a court must ultimately rule in the admitting party's favor on the point at issue for an assertion of fact to constitute a judicial admission that is binding on the party.  And whether hours and rates are reasonable is a factual, not legal, conclusion.  Mr. Matteis's fee-shifting testimony as to the reasonableness of Gilbert LLP's rates was based on his own experience and market data, not legal

16

standards.[5]  Courts nationwide agree that such testimony as to the reasonableness of fees is factual.  The district court's ruling thus constitutes reversible legal error.

Third, the district court committed legal error by declining to consider evidence submitted by Gilbert LLP that specifically addressed the factors this Court had directed the district court to consider on remand.  Because this Court vacated the district court's ruling, the parties were left in the same position as they were before the ruling below, and the parties were entitled to re-litigate the matter by submitting additional evidence or arguments.  Gilbert LLP appropriately submitted evidence that specifically addressed the *Campbell County* factors, which this Court had directed the district court to apply.  Indeed, on remand, the district court itself directed the parties to submit supplemental briefs demonstrating the proper application of this Court's ruling.

Fourth, the district court committed legal error by declining to accept unrebutted evidence regarding the *quantum meruit* value of Gilbert LLP's services, including (a) the reasonableness of its hourly rates, (b) the number of hours expended on the matter and the appropriateness of those hours, and (c) the proper adjustment to the lodestar to reflect the *Campbell County* factors.  Alpha provided

---

[5] But for the fact that Alpha was offering Mr. Matteis's testimony as factual evidence, there would have been no reason to submit a declaration.  Mr. Matteis offered legal arguments in the Fee-Shifting Petition on Alpha's behalf and if this material was just legal argument, it too would properly have been included in the briefing.

no cognizable contradictory evidence. With respect to hourly rates, Alpha provided no evidence whatsoever. On the contrary, Alpha admitted in connection with the Fee-Shifting Petition that Gilbert LLP's hourly rates were reasonable.

With respect to hours, while Alpha provided WM&C's line-by-line critique of Gilbert LLP's unedited invoices, that critique was contrary to Alpha's binding judicial admission in the Fee-Shifting Petition that the hours for which fees were sought there were reasonable. And to the extent that WM&C disputed hours subsequent to the Fee-Shifting Petition, Gilbert LLP wrote them off, in order to streamline the district court's task in applying the Court's guidance from the first appeal. In short, for each hour that Gilbert LLP requested, on remand, be included in any lodestar calculation, Alpha either did not dispute the hour, or admitted in the Fee-Shifting Petition that the hour was reasonable (as discussed further in section I.E.1.) and thus can no longer seek to contradict the appropriateness of that hour. The district court was required to accept this uncontroverted evidence.

Finally, the district court abused its discretion by awarding the same deeply discounted lodestar as it did previously without providing an enhancement for the *Campbell County* factors. The district court's ruling does not correctly apply the legal standards for a *quantum meruit* fee determination as articulated by this Court, is inconsistent with the uncontroverted evidence in the record, and, by awarding only a fraction of Gilbert LLP's hourly-basis fees with no enhancement for the

contingent nature of the fee arrangement or the other *Campbell County* factors,

contravenes the important public policy in Virginia and the Fourth Circuit that a

*quantum meruit* fee should not be set at such a low level as to discourage

contingency fee arrangements and thus hamper clients' access to counsel.  The

district court's lodestar calculation is also inconsistent with its ruling on the Fee-

Shifting Petition, where it did not deeply discount the fee award based on the

primary factors (vagueness and lumping in time entries) that it relied on here.  The

uncontroverted evidence in the record demonstrates that Gilbert LLP is entitled to

a lodestar of $3,118,595 plus at least a two times multiplier to account properly for

the *Campbell County* factors.

Gilbert LLP respectfully asks this Court to reverse the district court's order

and either award it an appropriate fee based on the uncontested evidentiary record

or remand the case for further proceedings consistent with the foregoing points and

the discussion below.

## STANDARD OF REVIEW

Conclusions of law for attorney fee awards are reviewed *de novo* and

findings of fact are reviewed for clear error (abuse of discretion).  *See United Food*

*& Commercial Workers, Local 400 v. Marval Poultry Co.*, 876 F.2d 346, 351 (4th

Cir. 1989).  Failures to follow an appellate court's mandate are also reviewed *de*

*novo.  See S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 583 (4th Cir. 2004).

The district court's errors of law—including but not limited to its failure to follow this Court's mandate, its failure to apply applicable Virginia law, its failure to apply relevant factors in valuing Gilbert LLP's lien under *quantum meruit*, its erroneous interpretation of the impact of vacatur and the standards for judicial admissions, and its improper reliance on fee-shifting standards—are subject to *de novo* review.

Other errors are reviewed for abuse of discretion.  Because "an exercise of discretion" will frequently be "based upon explicit or implicit findings of fact and conclusions of law," a court's fee determination will frequently be an "amalgam." *Id.*  "Review may correspondingly be an amalgam . . . ." *Marval Poultry*, 876 F.2d at 351.  Moreover, "the deferential review ordinarily inherent in [the exercise of discretion] standard is modified by a closer review when"—as here—"the appropriate criteria that are established for a fee award are in question." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

## ARGUMENT

I.    **The District Court Committed Legal Error By Failing To Comply With This Court's Directives On Remand.**

     A.    **The District Court Failed To Comply With This Court's Directive To Award An Amount "Much Larger" Than Gilbert LLP's Hourly-Basis Fee Due To The Contingent Fee Arrangement.**

This Court's mandate was clear: "[T]he particular circumstances of this case—where Gilbert LLP represented Alpha from initial pleadings to a $26 million judgment—suggest that the contingent nature of the fee arrangement should have been a *significant factor* in a *quantum meruit* analysis." App. Op. at 9 (citing *Lowe v. Mid-Atl. Coca-Cola Bottling Co.*, 33 Va. Cir. 361, 363 (Va. Cir. Ct. 1994)) (emphasis added). This Court specifically noted that Virginia law includes a "*recognized rule*" that an award "*much larger*" than hourly fees is appropriate to account for the contingent nature of a fee arrangement (such as Gilbert LLP's agreement with Alpha). *Id.* at 10 (quoting *Lowe*, 33 Va. Cir. at 363 (quoting *Campbell Cnty.*, 112 S.E. at 885)) (emphasis added).

The district court ignored this Court's directive in this regard, refusing to treat the contingent nature of Gilbert LLP's representation as a relevant factor in its fee award calculation and ruling that "such an enhancement is inappropriate here." J.A. 745. The district court did not offer a valid rationale for its failure to enhance, since the only bases it cited had been considered and rejected by this Court. The

21

district court's failure to follow this Court's mandate constitutes legal error and

warrants reversal.

**B.    The District Court's Bases For Refusing To Enhance The Fee Award Due To The Contingent Nature Of The Fee Arrangement Were Considered And Rejected By This Court.**

**1.    Gilbert LLP's Termination After The $26.63 Million Judgment It Secured But Prior To Recovery Does Not Justify The Failure To Enhance The Fee Award.**

The district court concluded that an upward adjustment of Gilbert LLP's

*quantum meruit* fee was not appropriate because Gilbert LLP was terminated

"prior to actual recovery." J.A. 745. But this argument was considered and

rejected by this Court previously on appeal, and it therefore cannot constitute a

ground for failing to award an amount "much larger" than an hourly-basis lodestar.

In the prior appeal, Alpha asserted that a contingency-based enhancement

was "prohibit[ed]" because Gilbert LLP "did not effect a recovery." Br. of

Appellees at 52 & n.7, *Gilbert LLP v. Tire Eng'g & Distrib., LLC*, No. 14-2192

(4th Cir. Apr. 17, 2015), ECF No. 21 ("Alpha App. Br."). This Court flatly

rejected Alpha's argument, stating that the contingent nature of the fee

arrangement "should have been a significant factor in a *quantum meruit* analysis,"

and highlighting the "recognized rule" that a "charge 'much larger' than normal

may properly be charged" under such circumstances, given that "[e]very hour

spent in performance of a contingent fee contract is an hour spent against the risk

22

of no compensation at all." App. Op. at 9–10 (quotation omitted). The Court

made these rulings based on "the particular circumstances of this case," knowing

that Gilbert LLP had been discharged before there was any recovery on the $26.63

million judgment Gilbert LLP had secured. App. Op. at 9.

Of course, in virtually every *quantum meruit* determination involving a

contingency fee arrangement, the judgment will not have been collected before the

law firm in question was terminated without cause. If the judgment had been

collected, the contingency fee would have been paid and there would be no need

for a *quantum meruit* determination. Thus, disregarding the contingency factor

because there are no collections would render the factor meaningless. Alpha's

argument thus proves too much. If accepted, it would eliminate a key factor

identified by *Campbell County*—and this Court—as applicable in this type of

*quantum meruit* situation.

Alpha, however, was undeterred by this Court's rejection of its arguments

and urged the same points on the district court on remand. Alpha characterized the

Court's discussion of the applicability of the *Campbell County* contingency fee

factor as a mere "suggest[ion] in dicta." J.A. 480–81. Alpha urged the district

court to reach a conclusion contrary to the analytical guidance this Court provided,

arguing that no contingency-based enhancement was warranted because "Gilbert

failed to achieve any recovery." J.A. 683. The district court adopted these

arguments.  J.A. 745.  The district court's refusal to follow this Court's ruling

based on arguments that this Court had rejected in vacating the district court's prior

ruling and remanding the case constitutes legal error and warrants reversal.

> **2.    The Fee Agreement Does Not Justify Ignoring This Court's Directive.**

The district court also refused to treat the contingent nature of Gilbert LLP's

representation as a relevant factor in its analysis based on a provision in the fee

agreement between Alpha and Gilbert LLP stating that if Gilbert LLP was

terminated, it would receive its full hourly-basis fees through termination and

could elect to receive its 40% contingency fee, to the extent it exceeded the hourly-

basis fees, on recoveries within one year of termination.  J.A. 745.  Alpha argued

this same point in the prior appeal, contending that Gilbert LLP's request for a

contingency fee-based award "is irreconcilable with the Gilbert Engagement

Agreement."  Alpha App. Br. at 17.  Alpha's argument was rejected by this Court.

App. Op. at 7–9, 11.  The Court ruled that the fee agreement was inoperative

because Gilbert LLP had been discharged without cause and its fee must be

determined based on *quantum meruit* (as both Alpha and Gilbert LLP agreed, and

as the district court previously ruled).  App. Op. at 7.  Moreover, even if the fee

agreement Alpha sought to rely on were otherwise enforceable, Alpha could not

rely on the termination provision's limitation on the right to receive a contingency

fee when it breached its obligation under that same provision to pay Gilbert LLP's hourly-basis fee on termination.[6]

Despite this Court's ruling, Alpha again argued on remand that the fee agreement precluded Gilbert LLP from seeking a contingency-based enhancement. J.A. 495 (arguing that Gilbert LLP "assumed the risk" in the fee agreement that "it would not receive a higher, contingency-based fee after termination"). Alpha sought to apply just one part of a termination provision that both Alpha and Gilbert LLP agreed, and that both this Court and the district court had ruled, was unenforceable. The district court adopted this argument, stating that the fee agreement "points persuasively to the conclusion that plaintiffs and the Gilbert Firm knew from the outset" that Gilbert LLP would be entitled "*only* to an absolute fee based on the hours expended."[7] J.A. 746. The district court's refusal to follow

---

[6] The limitation on the right to receive the contingency fee in the fee agreement was tied to the entitlement to receive full hourly-basis fees on termination. Here, of course, Alpha did not pay full hourly-basis fees on termination and argues that Gilbert LLP is entitled to just a fraction of such fees. Thus even if the fee agreement were otherwise enforceable, Alpha could not selectively enforce the termination provision to reap its benefits but avoid its obligations. *See Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 965–66 (W.D. Va. 2000) ("blue penciling" a contract is improper); *Cliff Simmons Roofing, Inc. v. Cash*, No. CH99-17308, 1999 WL 370247, at *1–2 (Va. Cir. Ct. June 4, 1999) (same).

[7] Contrary to the district court's conclusion, if the fee agreement were enforceable, Gilbert LLP would have received, at the least, its *full* hourly-basis fees on termination in 2011; not just one-third of that amount years later, per the district court's ruling.

this Court's directive based on arguments rejected by this Court constitutes legal error and warrants reversal.

### C. The District Court Failed To Comply With This Court's Directive To Take Into Account The $26.63 Million Judgment Secured By Gilbert LLP.

Contrary to this Court's directive, the district court refused to give any weight to the $26.63 million judgment secured by Gilbert LLP on which Alpha's recoveries are based. The district court attempted to justify its actions based mainly on its view that (a) the $26.63 million judgment was irrelevant because the recoveries on it occurred after Gilbert LLP was terminated, and (b) in any event the "result secured" should bear only "upon the consideration of the efficiency with which [the services] were rendered, and . . . not from the standpoint of their value to the client." J.A. 754–55 (quoting *Campbell Cnty.*, 112 S.E. at 885).

Again, Alpha had raised these exact arguments during the prior appeal. Alpha App. Br. at 24–25, 51–52. The Court rejected those arguments, finding that the district court should have considered the "result secured" by Gilbert LLP in this case—that is, the $26 million judgment.[8] In doing so, this Court was fully aware that the recoveries on the judgment secured by Gilbert LLP had occurred after

---

[8] Alpha does not dispute that the result secured by Gilbert LLP was outstanding, nor could it. Mr. Matteis has described the outcome of the case as a warning to similarly situated defendants. News reports have described the judgment as one of the largest in Virginia in 2010 and one of the largest copyright infringement awards in U.S. history. *See infra* at 46.

Gilbert LLP was terminated and that Alpha and the district court had discounted the result secured as only pertaining to efficiency. App. Op. at 10. As noted above, the Court made these findings based on "the particular circumstances of this case." *Id.* at 9.

Alpha's arguments and the district court's conclusion are especially problematic here, where the contingent nature of Gilbert LLP's fee and the outstanding result secured are particularly salient. *Campbell County* instructs courts to disregard extraneous factors that have no bearing on the intrinsic value of the attorney's service and instead look at the economic value of the services provided. The key is what fee would be sufficient to induce a qualified attorney to undertake a representation. *See Old Dominion Transp. Co. v. Hamilton*, 131 S.E. 850, 852-53 (Va. 1926). The relevant inquiry here is therefore what fee would have been sufficient to induce a qualified law firm to handle Alpha's case through litigation, trial, judgment, and appellate briefing on a contingency fee basis. It cannot seriously be contended that the promise of a fee that was a mere fraction of the hourly-basis fees incurred and that did not reflect a substantial enhancement for the contingency fee risk and outstanding result secured would have induced a qualified firm to handle the Alpha case. Gilbert LLP certainly would never have

taken on the Alpha case if it had known that this would be the result.[9]  As this

Court observed in *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir.

2010), it is error to "reduce[] counsel's fee to a level that few attorneys would have

accepted at the outset of litigation, when success was by no means assured and the

size of any settlement or judgment was unpredictable."

Alpha advanced the same arguments on remand that had been rejected by

this Court in the prior appeal.  J.A. 498–500.  The district court accepted the

arguments, yet again reaching a conclusion in direct conflict with this Court's

decision in the prior appeal.  J.A. 754–55.  The district court's ruling in this regard

constitutes legal error and warrants reversal.

### D.    The District Court Committed Legal Error By Relying On Fee-Shifting Standards.

In its previous ruling, the district court relied heavily on standards from fee-

shifting cases to determine Gilbert LLP's fee award.  J.A. 449–51.  In the prior

appeal, Alpha attempted to justify the district court's use of fee-shifting standards,

---

[9] And it is fundamentally inequitable to put a client in the position to reap the benefit of a successful judgment and then allow it to terminate the counsel that secured the judgment under the risk of a contingency fee arrangement and pay only a deeply discounted lodestar fee—especially where, as here, the second-in-time counsel may reap a windfall as a result.  As Gilbert LLP demonstrated in the prior appeal, the district court's ruling, if upheld, would create perverse economic incentives for clients and counsel to use the power of termination to deprive contingency counsel of the fruits of its efforts and would therefore discourage lawyers from taking on contingency fee cases in the first place, contrary to public policy in Virginia and the Fourth Circuit.  *See* Appellant Br. at 17–21; Appellant Reply at 10–11.

arguing that "[a]ny reliance by the district court on fee shifting cases was appropriate."  Alpha App. Br. at 34.  This Court disagreed, expressly reminding the district court that "this is not a fee shifting-case (like those cited in [the district court's] opinion)," and that the district court must instead consider "the balance of all the [*Campbell County*] factors."  App. Op. at 10–11 n.4.

Notwithstanding this Court's opinion, Alpha argued on remand that fee-shifting cases dictated that no adjustment to the district court's discounted lodestar was warranted.  J.A. 495–96, 498–99.  The district court again accepted these arguments, citing fee-shifting cases as support for its award of the same discounted lodestar from the first round of proceedings, with no adjustments made for any of the *Campbell County* factors.  J.A. 742–43.  The district court's repeated reliance on fee-shifting cases contravenes this Court's previous ruling and constitutes reversible error.

Fee-shifting statutes impose the legal fees of the prevailing party on the losing party, which neither selected the prevailing party's law firm, agreed to pay its legal fees, nor benefited from its work.  *See Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 666 n.10 (11th Cir. 2013) (a "fair value attorney fee recoverable in quantum meruit is not measured by the standards applied when fees are awarded [to an] opposing party under [a] fee-shifting statute or doctrine") (quoting *Searcy, Denney, Scarola, Barnhart &*

*Shipley, P.A. v. Poletz*, 652 So. 2d 366, 368–69 (Fla. 1995)); Restatement (Third) of Law Governing Lawyers § 39A cmt. A (2000) ("The 'fair-value' fee recoverable [in *quantum meruit*] is not measured by the standards applied when a party recovers a reasonable attorney fee from an opposing party under a fee-award statute or doctrine."). Given the distinct considerations at play in fee-shifting cases, the Supreme Court has rejected the proposition that the standards applicable under fee-shifting statutes are controlling, or even helpful guidance, with respect to the determination of an appropriate fee between a lawyer and a former client. *See*, *e.g.*, *Venegas v. Mitchell*, 495 U.S. 82, 88–90 (1990).

For example, while it may be appropriate in the fee-shifting context to reduce hourly rates to those charged in the local market to protect losing parties who never contracted for those rates, such discounts are not appropriate here, where Alpha selected Gilbert LLP knowing that it was a Washington, D.C., not a local Virginia, law firm, and where Alpha faced well-funded law firms charging similar rates.

Further, courts agree that "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992). This is true even in fee-shifting contexts and is certainly true in the even more liberal *quantum meruit* context. The Court's function here was to "determine what the lawyer would

receive if he were selling his services in the market rather than being paid by court order." *In re Continental Illinois Securities Litigation*, 962 F.2d at 568; *see also Rum Creek Coal Sales*, 31 F.3d at 175 (holding that "a fully compensatory fee will include compensation for all hours reasonably expended at market rates in the relevant community, and market rates may be proved by the rate which clients normally and willingly pay the petitioning attorneys"). Accordingly, appropriate rates even in fee-shifting cases should reflect market rates, such as the rates that sophisticated business clients with hourly fee agreements pay counsel. In the more liberal *quantum meruit* context, usual hourly rates that fall within the range of actual market rates should be accepted.[10] As is discussed below, *see* Sections I.E.1.-3., *infra*, the *only* evidence in the record here—Alpha's admissions, Mr. Matteis's declaration, fact and expert affidavits Gilbert LLP submitted to the district court, and case law delineating market rates in the Eastern District of Virginia—all support the conclusion that Gilbert LLP's hourly rates are reasonable and should be applied in determining an appropriate *quantum meruit* fee.

In light of the foregoing, the district court's reliance on the limitations imposed by fee-shifting cases was legal error and warrants reversal.

---

[10] One of Gilbert LLP's experts, Professor Charles Silver, further explained the rationale behind the principle that market data is a reliable source of evidence in determining the *quantum meruit* value of an attorney's services. *See* J.A. 648–51.

E.     **The District Court's Refusal To Consider Evidence Essential To Proper Application Of The *Campbell County* Factors Was Based On Erroneous Legal Standards.**

1.     **The Court Committed Legal Error By Failing To Treat As Binding Judicial Admissions Alpha Statements In The Fee-Shifting Petition That Gilbert LLP's Hourly-Basis Fee Were Reasonable.**

Alpha made binding judicial admissions in the Fee-Shifting Petition that contradict its current contentions as to the reasonableness of Gilbert LLP's hourly-basis fees expended.  The district court's failure to treat Alpha's statements in the Fee-Shifting Petition as binding judicial admissions was based on erroneous legal standards and constitutes reversible legal error.

The Fee-Shifting Petition sought certain fees and costs against the defendants in this case for work on claims subject to the Lanham Act.  J.A. 167. At the time the Fee-Shifting Petition was filed, Gilbert LLP still represented Alpha, and Gilbert LLP filed the Fee-Shifting Petition on behalf of Plaintiffs.  J.A. 540. Mr. Matteis was the lawyer who was primarily responsible.  J.A. 540–41.  Alpha filed a declaration by Mr. Matteis supporting the Fee-Shifting Petition, *see* J.A. 191–96, in which Mr. Matteis testified that "Gilbert LLP attorneys' billing rates are reasonable" based on "my experience practicing law in this jurisdiction and on my knowledge of prevailing market rates."  J.A. 195.  Alpha made similar assertions in the Fee-Shifting Petition.  J.A. 177–81.  Alpha now argues that those same rates are unreasonable.  J.A. 492–93.

32

Alpha's Fee-Shifting Petition sought an award for 4,897.60 hours for a subset of the work Gilbert LLP performed on claims subject to the Lanham Act. J.A. 179. Mr. Matteis's declaration states that he personally reviewed and edited the time records to reach the amount of hours that he and Alpha then described as "appropriate" and "reasonable given the claims at issue, the number and location of defendants, and the contentious discovery period." J.A. 179, 194–95. Alpha adopted and relied on these factual assertions. J.A. 179. Alpha now contends that Gilbert LLP's fee must be based on a far smaller number of hours for the work in this period.

Alpha may not now assert a position inconsistent with its admissions in the Fee-Shifting Petition. Alpha's attempt to have its fee obligation to Gilbert LLP determined based on far lower rates than it previously admitted were reasonable and for which it sought recovery in the Fee-Shifting Petition is unsupportable. Similarly, Alpha's attempt to exclude 496 time entries that it previously admitted were reasonable and for which it sought recovery in the Fee-Shifting Petition is unsupportable. J.A. 518–19, 541.

The district court held that these statements could not be binding judicial admissions because they were rejected by the court at the Fee-Shifting Petition stage and because they were legal conclusions. J.A. 744. Both points are incorrect as a matter of law.

It is well-established that statements in a declaration constitute judicial admissions binding upon a party. *See VIA Design Architects PC v. U.S. Dev. Co., LLC*, No. 2:13CV555, 2014 WL 5685550, at *7 (E.D. Va. Nov. 4, 2014) ("[L]egal memoranda, *unlike pleadings or affidavits*, do not generally constitute binding judicial admissions . . . .") (emphasis in original) (quoting *Willis v. Wells Fargo Bank, N.A.*, No. 2:11CV193, 2012 WL 112942, at *8 (E.D. Va. Jan. 12, 2012)). It is similarly well-established that statements in a brief may serve as judicial admissions as long as they are "deliberate, clear, and unambiguous." *Id.* (citing *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004)). Here, the statements by Alpha and Mr. Matteis clearly meet those standards.

Contrary to the district court ruling, there is no requirement that a court must ultimately rule in the admitting party's favor on the point at issue for the statement to constitute a binding admission. *See id.*; *see also In re McNallen*, 62 F.3d 619, 625 (4th Cir. 1995) (finding a judicial admission of willfulness over arguments that willfulness was not established in the proceeding below). The district court's contrary view was simply wrong as a matter of law. The district court's mistake as to this legal issue caused it to entirely disregard party admissions that would have fundamentally altered the lien determination.

Here, there is no question that Alpha deliberately, clearly, and unambiguously took the position in the Fee-Shifting Petition that Gilbert LLP's

34

rates, and many of the now-contested hours, were reasonable, intending that the district court rely on its statements. There is no question that Mr. Matteis stated the same in his declaration. It is simply impermissible for Alpha and its counsel to change course now. *See VIA Design Architects*, 2014 WL 5685550, at *7 (holding that, where a party first sought a stay based on the terms of its contract and then sought to argue that it was not a party to the contract, the party's statements in the stay brief that it was a party to the contract were binding judicial admissions).

Contrary to the district court's holding, Alpha's admissions relate to factual matters, not legal issues. Alpha offered *as evidence* Mr. Matteis's opinion as to the reasonableness of Gilbert LLP's rates based on his own experience and market data. Courts in Virginia and nationwide agree that such testimony as to the reasonableness of attorneys' fees is factual. *See*, *e.g.*, *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991) (noting the importance of testimony "to assist the fact finder" in determining the reasonableness of an attorneys' fee); *Tanenbaum v. Agri-Capital, Inc.*, 885 F.2d 464, 471 (8th Cir. 1989) ("The amount of attorney's fees is a question of fact . . . ."); *Jerry Parks Equip. Co. v. Southeast Equip. Co.*, 817 F.2d 340, 344 (5th Cir. 1987) (same).[11]

---

[11] Alpha will now almost certainly assert in this appeal that the district court's determinations as to the reasonableness of hours and rates are factual determinations subject to a high degree of deference by this Court. Such a position would be wholly inconsistent with Alpha's attempts to escape the obvious impact of its prior admissions.

In the light of the foregoing, the district court's failure to treat as binding judicial admissions Alpha's statements in the Fee-Shifting Petition that Gilbert LLP's hourly-basis fees were reasonable was an error of law and warrants reversal.

> **2.     The District Court Committed Legal Error By Refusing To Consider Evidence Highlighted Or Submitted By Gilbert LLP Following Vacatur.**

This Court vacated the district court's previous ruling and remanded the case with express instructions to analyze the *Campbell County* factors. App. Op. at 10 n.4. Following remand, the district court ordered Gilbert LLP and Alpha "to file supplemental briefs that *clearly apply* the tests elucidated by the Fourth Circuit." J.A. 473–74 (emphasis added). Consistent with both courts' orders, Gilbert LLP highlighted evidence that had been in the record from the beginning of the proceedings and also submitted other evidence to assist the district court in applying this Court's ruling. But the district court declined to consider any of Gilbert LLP's evidence. J.A. 748.

The district court's refusal to consider this evidence misperceives the effect of vacatur and is inconsistent with the task assigned to the district court on remand by this Court. This Court's prior opinion focused the district court and the parties precisely on the *Campbell County* factors, and the additional evidence that Gilbert LLP offered applied directly to such factors. Because this Court vacated

36

the district court's ruling, the parties were left in the same position as they were before the judgment, and the parties thus were permitted to offer additional evidence. *See Zeneca Ltd. v. Novopharm Ltd.*, 919 F. Supp. 193, 196 (D. Md. 1996) ("[A] vacated judgment and the factual findings underlying it have no preclusive effect; the judgment is a legal nullity" and the vacatur "clears the path for future relitigation of the issues between the parties . . . ."); *Am. Modern Home Ins. Co. v. Corra*, No. 6:06-CV-01015, 2009 WL 3424226, at *6 (S.D.W. Va. Oct. 22, 2009) (same).[12]  It was entirely appropriate to submit evidence that specifically addressed the *Campbell County* factors.

Further, the district court's position contradicts its repeated statements during both rounds of briefing that it needed detailed information regarding Gilbert LLP's rates and hours to analyze the *Campbell County* factors properly.  J.A. 453, 744.  The district court did not specifically request evidence in connection with its 2013 briefing order, *see* J.A. 329, yet, based on statements in its first ruling

---

[12] *See also Boston Firefighters Union Local 718 v. Boston Chapter NAACP, Inc.*, 468 U.S. 1206, 1211 (1984) ("a vacated judgment, by definition, cannot have any preclusive effect in subsequent litigation" and should "clear[] the path for full litigation"); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950) (vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment . . ."); *Statewide Reapportionment Advisory Comm. v. Beasley*, 99 F.3d 134, 136 (4th Cir. 1996) ("[T]he judgment's vacatur on appeal renders it a legal nullity.") (quotation omitted); *Baltimore Luggage Co. v. Samsonite Corp.*, 727 F. Supp. 202, 209 (D. Md. 1989); *United States v. Ayres*, 76 U.S. 608, 610 (1869) (order granting a new trial "has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place . . .").

regarding the necessity of additional information to evaluate properly the value of

Gilbert LLP's services, the district court clearly expected the parties to submit

evidence with their submissions.  J.A. 453.  There was no reason to think that the

district court's briefing order following remand sought different submissions,

especially in light of the district court's order that the parties "apply" this Court's

tests.

The concern expressed by the district court that Alpha would not have

sufficient opportunity to analyze and respond to that evidence is misplaced.  J.A.

748.  Alpha had the first and last word in the proceedings on remand (that is, the

district court ordered that it would file the first and last briefs), and, for strategic

reasons or otherwise, it chose not to submit its own evidence, either in its

affirmative brief or in its response to Gilbert LLP's brief.  That does not justify the

district court's decision to ignore the evidence highlighted or submitted by Gilbert

LLP—including evidence that has been in the record from the beginning of the

proceedings.  The district court's refusal to consider evidence directly relevant to

the issues on remand following vacatur constitutes legal error warranting reversal.

### 3.    The District Court Committed Legal Error By Declining To Accept Unrebutted Evidence.

While a district court may exercise discretion over fee matters, that

discretion is not unlimited.  "A trial judge cannot substitute his own judgment for

uncontradicted evidence without record support."  *NAACP v. City of Evergreen,*

*Ala.*, 812 F.2d 1332, 1336 (11th Cir. 1987) (citing *King v. McCord*, 707 F.2d 466, 468 (11th Cir. 1983)); *see also Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 657 (3d Cir. 1986) (*vacated on other grounds*, 483 U.S. 1015 (1987)) (trial court abused discretion by varying the rates competently set forth in uncontested affidavits).  Courts may not rely on independent information without giving the parties an opportunity to address that information.  *See*, *e.g.*, *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648–51 (7th Cir. 2011) (district court erred by relying on independent internet research on attorneys' fees without giving parties opportunity to address information); *Lillie v. U.S.*, 953 F.2d 1188, 1191 (10th Cir. 1992) (district court required to provide explanation or record support for findings sufficient to allow litigant an "opportunity to cross-examine, to object to the introduction of the evidence, or to rebut the evidence").  Failure to do so violates Federal Rule of Evidence 201 and contravenes the well-established principle that a court's order on attorneys' fees must allow sufficient detail for a meaningful review.  *See Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985).

Here, Gilbert LLP provided evidence of its hourly rates, along with Alpha's admissions that those rates were reasonable.  Gilbert LLP also provided expert opinions supporting the reasonableness of its hourly rates.  And it cited to *Vienna Metro v. Pulte Home Corp.*, which establishes that Gilbert LLP's rates are (with one minor exception) entirely within the going rates in the Eastern District of

Virginia. No. 1:10-cv-00502, 2011 U.S. Dist. LEXIS 158648 (E.D. Va. Aug. 24, 2011). Alpha provided no contradictory evidence. Gilbert LLP similarly provided detailed descriptions of its hours and substantial evidence supporting the appropriateness of those hours, including judicial admissions by Alpha, declaration testimony by its counsel, and fact and expert affidavits. While Alpha had submitted a critique of Gilbert LLP's time records, that critique was subsequent to and inconsistent with Alpha's prior judicial admissions (including the declaration of Mr. Matteis) in connection with the Fee-Shifting Petition that Gilbert LLP's hours and hourly rates were "reasonable," and thus the later critique was not entitled to any weight. With respect to Gilbert LLP's time incurred after the Fee-Shifting Petition, Gilbert LLP eliminated time that Alpha had objected to in its critique of Gilbert LLP's time, so there was also no contested issue as to the remaining time sought.

The district court was required to accept this uncontradicted evidence in the record. Instead, the district court ignored the record and based its analysis solely on fee-shifting standards and the court's "knowledge of the case and litigation generally." J.A. 751–52. Indeed, the district court stated that it relied on its own views of appropriate hourly rates because Gilbert LLP had "offered no additional proof" that it was entitled to rates higher than those charged by similarly-situated

attorneys in Northern Virginia.  J.A. 744.  But Gilbert LLP had provided abundant proof of the reasonableness of its hourly rates.

Notably, the district court's decision to ignore Gilbert LLP's uncontradicted evidence and instead select hourly rates based solely on its own "knowledge" was also contrary to this Court's express instructions that, on remand, the district court should provide concrete factual bases for its *quantum meruit* fee calculation.  App. Op. at 9–10 (noting that lack of detail made district court's initial fee award "impossible for us to review . . . for an abuse of discretion," and instructing district court, on remand, to include in its fee determination "detail sufficient to allow for meaningful appellate review").  The district court's approach denies this Court any opportunity to review the district court's analysis or conclusions.

The district court's failure to accept Gilbert LLP's uncontradicted evidence constitutes legal error and warrants reversal.

## II.    The District Court Committed Legal Error Or At The Very Least Abused Its Discretion By Adopting The Same Lodestar As Before And Making No Adjustment For The *Campbell County* Factors.

In addition to the legal errors discussed above, the district court's factual determinations, and the manner in which it applied the Court's prior ruling and the *Campbell County* factors to the facts, constitute legal error, an abuse of discretion, or an amalgam of the two.

41

A.    **The District Court's Fee Determination Is Contrary To Voluminous, Uncontroverted Evidence Supplied By Gilbert LLP Regarding The Proper Lodestar And The Appropriate Impact Of The *Campbell County* Factors.**

Gilbert LLP provided substantial evidence addressing the proper lodestar and each of the *Campbell County* factors, much of which had been in the record from the beginning of these proceedings.

The hourly rates that the district court utilized for its lodestar calculation are an abuse of discretion because they are inconsistent with everything in the record, and the record is substantial on this issue. In a declaration filed with the Fee-Shifting Petition, Alpha's attorney, Mr. Matteis, testified that "Gilbert LLP attorneys' billing rates are reasonable" based on "my experience practicing law in this jurisdiction and on my knowledge of prevailing market rates." J.A. 195. Alpha adopted these assertions. In addition to these admissions by Alpha, Gilbert LLP submitted declarations to demonstrate that sophisticated corporate clients routinely pay these rates. J.A. 552–53. Gilbert LLP also provided market data and expert testimony from long-time practitioners in the Eastern District of Virginia supporting the reasonableness of Gilbert LLP's hourly rates. J.A. 624–26 (citing *Vienna Metro*, U.S. Dist. LEXIS 158648); *MiTile, Ltd. v. Hasbro, Inc.*, No. 1:13-cv-451, 2013 U.S. Dist. LEXIS 143926 (E.D. Va. Oct. 3, 2013), among others). This is exactly the sort of evidence the district court indicated would be relevant in its initial ruling, but when Gilbert LLP submitted the evidence on

remand following vacatur, the district court refused to consider it.[13]  Nonetheless,
the entire record here supports the hourly rates Gilbert LLP requests, and no
evidence at all supports the district court's determination.

The number of hours included by the district court in its lodestar calculation
is also inconsistent with the overall record.  The lodestar hours requested by
Gilbert LLP were all admitted as reasonable by Alpha in the Fee-Shifting Petition
or were not challenged by Alpha in its detailed objections to the Gilbert LLP hours
submission.  The district court reduced Gilbert LLP's hours by 55% based largely
upon alleged vagueness in time entries and lumping of multiple tasks in single time
entries (it cut another 10% for other reasons), and based on Alpha's challenges to
those entries.  J.A. 752.  But, notably, the district court apparently cut no time
entries for vagueness and very few for lumping in its Fee-Shifting Petition ruling.
J.A. 210.  While it reduced the fee request there by a similar overall percentage, its

---

[13] The district court's statement at oral argument that "[y]ou tell me that some
lawyer is worth $750 an hour, I laugh at that," J.A. 713, is contrary not only to
prevailing market rates but also to multiple fee award decisions within the Fourth
Circuit.  *See Kidd v. CSX Transp.*, No. 89-0899, 1990 WL 518125 (W.D. Va. Oct.
9, 1990); *Vienna Metro*, 2011 U.S. Dist. LEXIS 158648; *MiTile*, 2013 U.S. Dist.
LEXIS 143926; *Abramson ex rel. Estate of Abramson v. Laneko Eng'g Co.*, 370 F.
Supp. 2d 498, 501, 504 (S.D.W. Va. 2005); *Melvin v. Colvin*, No. 5:10-CV-160-
FL, 2013 WL 3340490, at *3 (E.D.N.C. July 2, 2013); *Duvall v. Colvin*, No. 5:11-
577-RMG, 2013 WL 5506081, at *1 (D.S.C. Sept. 30, 2013); *In re Microstrategy,
Inc. Sec. Litig.*, 172 F. Supp. 2d 778 (E.D. Va. 2001) (Ellis, J.).  The district court,
in effect, concluded that its personal views on excessive rates trump the rates that
actually exist in the market.  J.A. 713–15.  Such an approach, unmoored from
evidence in the record, is not a valid basis for a fee determination.

rationale was different, pertaining mainly to factors wholly inapplicable here: it limited fee shifting to one of the two defendants that was deemed sufficiently culpable under the Lanham Act, solely to Lanham Act claims, and only to successful claims. Further, the district court's statement that "it is impossible to tell precisely which of the 10,955 hours the Gilbert Firm has removed from the fee claim in arriving at the 6,763 hours it now seeks," J.A. 748, is flatly incorrect. A declaration submitted on remand from Gilbert LLP partner Craig Litherland contains a detailed list of every hour that Gilbert LLP requested, on remand, be included in any lodestar calculation, in addition to the hours admitted as reasonable and detailed in the Fee-Shifting Petition. J.A. 539–55; S.J.A. 1026–1081.

The district court's hours analysis also relied considerably on the criticisms of Alpha and its WM&C counsel, notwithstanding that WM&C's criticism of the conduct of its own partners when they were at Gilbert LLP, to the extent successful, would have the perverse effect of dramatically increasing WM&C's own fee. *See* J.A. 348, 362–81, 414. The district court nonetheless declined to review WM&C's fee or to take into account the practical reality that this is in effect a fee dispute between law firms, and that WM&C is seeking to benefit by criticizing its own partners' conduct when they were partners at Gilbert LLP. *See* J.A. 425 (statement by district court at first fee dispute hearing that "I don't care how much [WM&C] get. Mr. Fishman can give them a bazillion dollars. Why

44

should I care?").  Even putting aside the fact that they are binding judicial admissions, Alpha's and Mr. Matteis's statements in connection with the Fee Shifting Petition are a much more reliable measure of appropriate hours than the challenges WM&C has advanced in the context of the fee lien dispute.

In any event, the unenhanced lodestar amount that the district court reached ignores the principle that courts—including this Court—have uniformly acknowledged:  that fees should not be set at "a level that few attorneys would have accepted at the outset" had they known that would be the result.  *In re Abrams & Abrams, P.A.*, 605 F.3d at 245–46; *see also Rum Creek Coal Sales*, 31 F.3d at 175 (holding that district court abused its discretion when it deeply discounted a law firm's hourly-basis fees without taking into account significant factors, such as the success achieved by the firm, and noting that "[the billing] deficiencies . . . do not detract from the difficulty and complexity of this case or the hours necessary to prosecute it").  Here, neither Gilbert LLP nor any other responsible, rational firm would have taken on the extraordinary investment and risk of Alpha's litigation had it known at the outset that it would be compensated for only a fraction of its hourly-basis fees, years later, after securing an outstanding result that eliminated the major risk factor in the case.

With respect to the specific *Campbell County* factors, the district court's conclusions are similarly unsupported.  With respect to the "contingent nature of

45

the fee agreement," Gilbert LLP provided evidence of the significance of the firm's investment in the matter and provided two expert opinions setting forth several alternative approaches for measuring and accounting for the contingent fee appropriately (*see* Section II.B., *infra*).  J.A. 540–55, 569–617, 642–70.  Alpha provided no evidence in response.  Yet the district court refused to credit Gilbert LLP's evidence.

With respect to the "result secured," it is undisputed that any recovery that Alpha ultimately obtained was dependent on Gilbert LLP's achievement in obtaining the $26.63 million judgment.[14]  Nonetheless, Gilbert LLP submitted evidence that Alpha's counsel, Mr. Matteis, attested to the importance of the matter in an interview published shortly after the verdict, saying, "[t]his case should serve as a bellwether for foreign multinational corporations who believe they can act with impunity, stealing intellectual property from a small U.S. business, and then avoid the reach of our judicial system."  J.A. 567.  Gilbert LLP also submitted news articles identifying the verdict as one of the two largest jury verdicts in Virginia in 2010 and one of the largest copyright infringement awards in U.S.

---

[14] While WM&C has sought to take full credit for the recoveries based on its collection efforts, those efforts were premised on the $26.63 million judgment that Gilbert LLP secured, and WM&C's collection efforts resulted in just $500,000 being secured in garnishment proceedings—less than 2% of the judgment over a three year period.

history.  *See* J.A. 565, 567.  Alpha neither disputed these facts nor provided its own evidence in response.

Gilbert LLP also submitted undisputed evidence relevant to related *Campbell County* factors, including the "responsibility imposed" and the "character and importance of the matter."  As noted above, Mr. Matteis has attested to the importance of this matter.  Gilbert LLP demonstrated that this was a complex dispute over Plaintiff Jordan Fishman's "life's work," and whether the theft of his intellectual property by a former employee would be allowed to stand. J.A. 127–28.  As Gilbert LLP explained, Mr. Fishman was David to the defendant Goliaths.  As a former employee of one of the defendants put it at trial, the defendants "didn't believe Jordan Fishman could ever get this case to court.  They believed he would die or run out of money first."  J.A. 137.

Similarly, this Court noted expressly that, under *Campbell County*, evidence as to the "skill and experience called for" and the attorneys' "standing in their profession" is essential to any analysis of an appropriate hourly rate in *quantum meruit*.  App. Op. at 10–11 n.4 (quotation omitted).  As noted above, courts have agreed that the best metric for quantifying these factors is to analyze "what the lawyer would receive if he were selling his services in the market rather than being paid by court order."  *In re Continental Illinois Securities Litigation*, 962 F.2d at 568; *see also Rum Creek Coal Sales*, 31 F.3d at 175.  Gilbert LLP submitted an

expert opinion corroborating the principle that the rates that sophisticated clients pay lawyers reflects their skill, experience, and standing in the profession. J.A. 642–70. Having established this foundation, Gilbert LLP submitted supporting evidence that clients with hourly fee agreements paid Gilbert LLP's customary hourly rates during the period of Gilbert LLP's representation of Alpha. J.A. 552–53. Alpha's only response was that copyright law was not advertised as Gilbert LLP's primary practice area on its website. J.A. 494–95. It is also worth noting that Gilbert LLP faced and vanquished several large national law firms that represented the defendants aggressively in the case (and that presumably charged rates equal to or higher than Gilbert LLP's).

Indeed, the only other evidence Alpha cited regarding any of the *Campbell County* factors was Gilbert LLP's original time entries, which Alpha attempted to use to support its arguments that the "nature and character of the services provided" were of limited value and the "time and labor expended on the matter" was unreasonable. *Campbell County*, 112 S.E. at 885. Gilbert LLP refuted both of these arguments, however, by (a) citing Alpha's binding judicial admissions that Gilbert LLP's hours were reasonable, (b) including in Gilbert LLP's requested lodestar only those hours incurred post-Fee-Shifting Petition that Alpha has not identified as objectionable during the current fee proceedings, and (c) submitting a

48

detailed declaration from Gilbert LLP partner Craig Litherland explaining the bases for asserting the reasonableness of the hours Gilbert LLP spent on the matter.

On every significant issue, the district court's conclusions stand against the overwhelming, indeed unrebutted, weight of the evidence in the record. A review of the overall record must inevitably lead to the conviction that the result reached by the district court is wrong, and that the district court committed errors of law and abused its discretion in this matter. Gilbert LLP respectfully submits that the district court's decision must be reversed.

### B. The Undisputed Evidence In The Record And Alpha's Judicial Admissions Mandate A Materially Higher Fee Award.

As discussed above, a review of the entire record before the district court, including Alpha's judicial admissions and the other undisputed evidence, mandate a materially different outcome. As Gilbert LLP contended in the district court, an appropriate outcome could have been reached by one of two methods.

Under the lodestar approach, the district court could have set a lodestar based upon Alpha's admissions as to reasonable hours and rates and then adjusted that amount based on the *Campbell County* factors. This approach would result in a lodestar calculation of $3,118,595. J.A. 517. This figure can be reached entirely based on Alpha's judicial admissions as to reasonable rates and hours. As noted above, however, the appropriate hourly rates are also supported by other uncontroverted evidence, including expert opinion evidence from both a local

practitioner who relies on local rate comparisons and an academic expert who relies on evidence of what other sophisticated clients pay, by *Vienna Metro*, and by a declaration from Gilbert LLP partner Craig Litherland establishing that clients of the firm regularly pay these rates. J.A. 540–55, 618–41, 642–70.

It is appropriate to enhance the lodestar based on the *Campbell County* factors this Court has identified as relevant. As noted above, the undisputed evidence—indeed, the only evidence in the record as to what enhancements would be appropriate under the particular circumstances of this case—is provided by Gilbert LLP's fee experts. Those experts conclude that a two to three times multiplier is required to account sufficiently for the *Campbell County* factors. J.A. 583–84, 643. That type of multiplier is well within the range of multipliers used in similar cases. J.A. 525–26.

Another appropriate approach would have been for the district court to award a share of the total 40% contingency fee to Gilbert LLP. Virginia courts have employed such an approach under circumstances similar to those in this case. For example, in *Kidd*, 1990 WL 518125, at *1, the court concluded, based on the contingent nature of the case and other *Campbell County* factors, that a discharged attorney and a new attorney were entitled to split the 25% contingency fee for which they had both contracted. *Id.* at *3; *see also Appleton v. Bondurant & Appleton, P.C.*, No. 04-1106, 68 Va. Cir. 208, 219–20, 226–28, 232–34 (2005).

50

Again, Gilbert LLP's fee experts supplied the only evidence in the record regarding what might be an appropriate fee split under such an approach. That uncontroverted evidence indicates that splitting the contingency fee would be appropriate under these circumstances. *See* J.A. 575, 654.[15] Professor Silver concluded that, because Gilbert LLP and WM&C shared the burden of recovering on Alpha's claims, the case can properly be conceptualized as a "forced referral" or "forced co-counsel" arrangement, J.A. 653, and the simplest way to divide the 40% contingency fee between the two firms is to award Gilbert LLP the percentage fee it typically would receive had it referred the case to WM&C voluntarily. J.A. 655–56. As explained in Gilbert LLP's brief on remand, Professor Silver concluded that, had the referral to WM&C been consensual, Gilbert LLP would be entitled to 24% of the gross recovery, including future recoveries, as fees (rather than 40% of the gross recovery as provided for in the fee agreement). J.A. 531. Consistent with the uncontroverted evidence provided by Professor Silver, the district court could have allocated to Gilbert LLP a portion of the contingency fee equal to 24%

---

[15] One of Gilbert LLP's experts, Geoffrey P. Miller, proposes that "this Court should allocate the total fee between Gilbert LLP and [WM&C] according to their respective contributions to the case . . . apply[ing] the same methodology to both firms." J.A. 575. Gilbert LLP proposed this methodology in the prior appeal, and still submits that such an approach is logical and supported by relevant precedent. However, given that Gilbert LLP currently lacks information regarding WM&C's hours that would be necessary to allocate the fee in this manner, Gilbert LLP has outlined Professor Silver's referral fee approach which would permit an allocation based on the information currently in the record.

of Alpha's gross recovery on the judgment (that is, 60% of the 40% contingency fee).

Regardless of the methodology employed, the record before the district court could not reasonably have supported an outcome significantly different from those described above, both of which are dramatically different from the award the district court reached.

## CONCLUSION

In light of the foregoing, Gilbert LLP respectfully requests that the Court reverse the decision of the district court and either award Gilbert LLP a fee consistent with the record under one of the methods described in the section above, or remand to the district court with specific instructions in light of the foregoing on how to reach an appropriate *quantum meruit* fee under the circumstances of this case.

## REQUEST FOR ORAL ARGUMENT

Gilbert LLP respectfully requests that the Court hear oral argument in this appeal. The case deals with important issues of law and public policy in Virginia and the Fourth Circuit. The decision in this appeal, in addition to resolving what constitutes a proper fee in this case under *quantum meruit* and the Court's prior ruling, will clarify how the *Campbell County* factors apply to contingent fee counsel terminated without cause after securing a successful judgment on the

client's behalf, and will affect the ability of prospective clients in other matters in

Virginia and the Fourth Circuit to secure counsel of their choice.  The case presents

the Court with an opportunity to clarify the applicable *quantum meruit* standard,

and to reaffirm the principle that courts must refrain from setting fees at a level that

would discourage contingency fee arrangements.  Gilbert LLP believes that oral

argument would aid the Court in reaching its decision.

     Respectfully submitted,

               /s/ Richard Shore
               *Counsel for Appellant Gilbert LLP*

Richard Shore
GILBERT LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
Email:   shorer@gotofirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
        28.1(e)(2) or 32(a)(7)(B) because:

        [ X ] this brief contains [*12,720*] words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [    ] this brief uses a monospaced typeface and contains [*state the number
        of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        [ X ] this brief has been prepared in a proportionally spaced typeface using
        [*Microsoft Word 2010*] in [*14pt Times New Roman*]; *or*

        [    ] this brief has been prepared in a monospaced typeface using [*state
        name and version of word processing program*] with [*state number of
        characters per inch and name of type style*].


Dated: June 1, 2016                          /s/ Richard Shore
                                             *Counsel for Appellant Gilbert LLP*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 1st day of June, 2016, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> William E. Copley, III
> August J. Matteis, Jr.
> WEISBROD MATTEIS COPLEY, PLLC
> 1200 New Hampshire Avenue, NW, Suite 600
> Washington, DC 20036
> (202) 499-7900
>
> *Counsel for Appellees*

I further certify that on this 1st day of June, 2016, I caused the required

copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk

of the Court and a copy of the Sealed Volume of the Joint Appendix to be served,

via UPS Ground Transportation, upon counsel for the Appellees, at the above

address.

/s/ Richard Shore
*Counsel for Appellant Gilbert LLP*