No. 16-1410

# In the
# United States Court of Appeals
## for the Fourth Circuit

GILBERT LLP, *Appellant*,

v.

TIRE ENGINEERING AND DISTRIBUTION, LLC, d/b/a Alpha Tyre Systems, d/b/a Alpha Mining Systems, a Florida Limited Liability Corporation; JORDAN FISHMAN, an individual; BEARCAT TIRE ARL, LLC, d/b/a Alpha Tire Systems, d/b/a Alpha Mining Systems, a Florida Limited Liability Company; BCATCO A.R.L., INCORPORATED, a Jersey Channels Islands Corporation, *Plaintiffs-Appellees*,

and

SHANDONG LINGLONG RUBBER COMPANY, LTD., a foreign company; SHANDONG LINGLONG TIRE COMPANY, LTD., f/k/a Zhaoyuan Leo Rubber Products Company, Ltd., a foreign company; AL DOBOWI, LTD., a foreign limited liability company; AL DOBOWI TYRE COMPANY, LLC, a foreign limited liability company; AL DOBOWI GROUP, a foreign corporation; TYREX INTERNATIONAL, LTD., a foreign limited liability company based in Dubai; TYREX INTERNATIONAL RUBBER COMPANY, LTD., a foreign corporation; QINGDAO TYREX TRADING COMPANY, LTD., a foreign corporation; SURENDER S. KANDHARI, an individual, *Defendants*.

On Appeal from the United States District Court for the Eastern District of Virginia, Alexandria Division

_____

**OPPOSITION BRIEF OF APPELLEES**
**TIRE ENGINEERING & DISTRIBUTION, LLC, et al.**

_____

William E. Copley (*Counsel of Record*)
August J. Matteis, Jr.
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Ave., N.W., Suite 600
Washington, D.C.  20036
Telephone: (202) 499-7900
wcopley@wmclaw.com

*Attorneys for Appellees Tire Engineering &*
*Distribution, LLC, et al.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1 and Local Rule 26.1, Appellees make the following disclosures:

1.     Tire Engineering & Distribution, LLC is not a publicly-held corporation.

2.     Tire Engineering & Distribution, LLC has no parent corporations.

3.     No publicly held corporation or other publicly held entity owns ten percent or more of the stock of Tire Engineering & Distribution, LLC.

4.     Tire Engineering & Distribution, LLC is not a trade association.

5.     Bcatco A.R.L. is not a publicly-held corporation.

6.     Bcatco A.R.L. has no parent corporations.

7.     No publicly-held corporation or other publicly-held entity owns ten percent or more of the stock of Bcatco A.R.L.

8.     Bcatco A.R.L. is not a trade association.

9.     Bearcat Tire A.R.L. is not a publicly-held corporation.

10.     Bearcat Tire A.R.L. has no parent corporations.

11.     No publicly-held corporation or other publicly-held entity owns ten percent or more of the stock of Bearcat Tire A.R.L.

12.     Bearcat Tire A.R.L. is not a trade association.

13.    No publicly-held corporation or other publicly-held entity has a direct financial interest in the outcome of the litigation.

14.    This case does not arise out of a bankruptcy proceeding.

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF AUTHORITIES ................................................... vi

COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW ................ 1

STATEMENT OF THE CASE .................................................. 2

I.     Background. ...................................................... 2

       A.     Jordan Fishman Retains Gilbert LLP. ................................. 3

       B.     Jordan Fishman Prevails in the Underlying Litigation. ...................... 4

       C.     The District Court Awards Fishman Attorney's Fees Under the
              Lanham Act. ............................................... 5

II.    Jordan Fishman Terminates Gilbert LLP and Retains Weisbrod
       Matteis & Copley PLLC. ............................................ 5

III.   Weisbrod Matteis & Copley PLLC Successfully Defends and
       Enforces Jordan Fishman's Judgment. ................................. 6

IV.    Gilbert LLP Demands that Jordan Fishman Pay Excessive Fees, and
       then Sues Him. .................................................. 9

V.     The District Court Originally Values Gilbert LLP's Lien at
       $1,958,341.67. ................................................. 10

VI.    This Court Vacates the Valuation of Gilbert's Lien and Remands for
       Explanation of How the District Court Applied Relevant *Campbell
       County* Factors. ............................................... 12

VII.   The District Court Increases the Value of Gilbert's Lien by More than
       $1 Million and Explains Its Application of the *Campbell County*
       Factors on Remand. ............................................. 15

SUMMARY OF ARGUMENT ................................................ 18

STANDARDS OF REVIEW ............................................................... 22

ARGUMENT ................................................................................... 23

I.    The District Court Complied Fully with This Court's Mandate. ................. 23

II.   The District Court Reasonably Exercised Its Broad Discretion When It Applied the *Campbell County* Factors to Calculate Gilbert LLP's *Quantum Meruit* Attorney's Fees. ................................................. 25

    A.   The District Court Reasonably Declined to Enhance Gilbert's Fee Based on the "Contingent Nature of the Fee Arrangement." ...... 26

        1.   Gilbert Agreed at the Inception of the Engagement to Be Paid Only an Unenhanced Hourly Fee Under the Circumstances of this Case. .................................................. 27

        2.   The District Court's Decision to Give Effect to the Fee Limitations to Which Gilbert Agreed Is Consistent with *Gilbert I* and Virginia Law. ................................................. 28

        3.   The Fee Limitation that Gilbert Accepted at the Inception of the Engagement Does Not Confer a Windfall upon Fishman. ................................................................. 32

    B.   The District Court Did Not Abuse Its Discretion When It Evaluated the Efficiency of Gilbert's Services Based on the Positive and Negative Results that the Firm Secured. ...................... 34

        1.   The District Court Correctly Limited Its Analysis of the "Results Secured" to the Evaluation of Gilbert's Efficiency in Providing Legal Services. .................................. 34

        2.   The District Court Reasonably Considered the Results Secured Along With Four Other Relevant *Campbell County* Factors to Analyze Gilbert's Efficiency...................... 35

    C.   The District Court Reasonably Determined Gilbert's *Quantum Meruit* Rates Based on the Relevant *Campbell County* Factors. ....... 42

1. The District Court Reasonably Applied the *Campbell County* Factors to Determine a Reasonable Hourly Rate. ....... 43

2. The District Court Did Not Improperly Rely Upon Fee-Shifting Cases. ....................................................... 46

3. The District Court Did Not Abuse Its Discretion by Declining to Base Gilbert's Hourly Rate Upon the Outlier Fee-Shifting Cases that Gilbert Prefers. ..................... 50

III. The District Court Acted Within Its Discretion when It Rejected Gilbert's Unauthorized Attempt on Remand to Reopen the Record for New Fact Finding. ....................................................... 51

A. The District Court Gave Gilbert a Fair Opportunity to Present Evidence Regarding the Reasonableness of Its Fees. ........................ 52

B. The District Court's Rejection of Gilbert's Unauthorized Submission of New Evidence on Remand was Within Its Broad Discretion. ......................................................... 52

C. The District Court Correctly Determined that a Gilbert Attorney's Legal Argument Is Not a Binding Judicial Admission by Fishman. .................................................... 55

REQUEST FOR DECISION ON THE BRIEFS .................................................. 58

CONCLUSION .................................................................................. 59

CERTIFICATE OF COMPLIANCE .................................................... 60

CERTIFICATE OF SERVICE ................................................................ 61

# TABLE OF AUTHORITIES

**Cases**

*Alford v. Martin & Gass, Inc.*,
  No. 1:08-cv-595, 2009 WL 2447936 (E.D. Va. Aug. 3, 2009) ..........................45

*Amato v. City of Saratoga Springs*,
  991 F. Supp. 62 (N.D.N.Y. 1998) ........................................................................38

*Am. Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ...............................................................................56

*Auto. Fin. Corp. v. EEE Auto Sales, Inc.*,
  No. 1:10-cv-1407, 2011 WL 3422648 (E.D. Va. Aug. 3, 2011) ........................44

*Bakalar v. Vavra*,
  851 F. Supp. 2d 489 (S.D.N.Y. 2011) .................................................................55

*Beasley v. Red Rock Financial Services, LLC*,
  583 F. App'x 138 (4th Cir. 2014) ........................................................................58

*Bishop v. Colvin*,
  No. RDB-13-519, 2014 WL 2093950 (D. Md. 2014) .........................................38

*Buckley Towers Condo, Inc. v. Katzman Garfinkel Rosenbaum, LLP*,
  519 F. App'x 657 (11th Cir. 2013) ......................................................................47

*Campbell County v. Howard*,
  112 S.E. 876 (Va. 1922)............................................................................. *passim*

*Carroll v. Wolpoff & Abramson*,
  53 F.3d 626 (4th Cir. 1995) ........................................................................ 22, 59

*Casa Del Caffe Vergnano S.P.A. v. Italflavors, LLC*,
  816 F.3d 1208 (9th Cir. 2016) .............................................................................57

*Chawla v. Burgerbusters, Inc.*,
  499 S.E.2d 829 (Va.1998)....................................................................................47

*Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Justice*,
   825 F. Supp. 2d 226 (D.D.C. 2011) ....................................................38

*Craft v. Covey*,
   No. 5:10-cv-246, 2011 WL 923487 (D. Vt. Mar. 4, 2011) ...............................56

*Daly v. Hill*,
   790 F.2d 1071 (4th Cir. 1986) ........................................... 23, 28, 51

*Dameron v. Sinai Hosp. of Balt., Inc.*,
   644 F. Supp. 551 (D. Md. 1986) .......................................................39

*Everett v. Pitt Cty. Bd. of Educ.*,
   788 F.3d 132 (4th Cir. 2015) ..........................................................57

*Fed. Deposit Ins. Corp. v. Aroneck*,
   643 F.2d 164 (4th Cir. 1981) ..........................................................57

*Furtado v. Bishop*,
   635 F.2d 915 (1st Cir. 1980) ..........................................................38

*Glassman Construction Co. v. United States*,
   421 F.2d 212 (4th Cir. 1970) ..................................................... 53, 54

*Goodwin v. Metts*,
   973 F.2d 378 (4th Cir.1992) ...........................................................39

*Grissom v. The Mills Corp.*,
   549 F.3d 313 (4th Cir. 2008) ..........................................................40

*Grubb v. United States*,
   No. 90-3054, 1991 WL 62499 (4th Cir. Apr. 25, 1991).................................53

*Heinzman v. Fine, Fine, Legum & Fine*,
   234 S.E.2d 282 (Va. 1977)........................................................ *passim*

*In re Botero-Paramo*,
   483 F. App'x 779 (4th Cir. 2012) ............................................. 37, 44

*In re Outsidewall Tire Litig.*,
    636 F. App'x 166 (4th Cir. 2016) ................................................................ *passim*

*In re Outsidewall Tire Litig.*,
    1:13-mc-22577 (S.D. Fla.) ...................................................................8

*In re Outsidewall Tire Litig.*,
    13 MC 249 (D. Ore.) ...........................................................................8

*In re Outsidewall Tire Litig.*,
    2:13-mc-00023 (W.D. Tenn.) ...............................................................8

*In re Outsidewall Tire Litig.*,
    2:13-mc-00315(C.D. Cal.) ....................................................................8

*In re Outsidewall Tire Litig.*,
    3:13-mc-00088 (N.D. Tex.) ..................................................................8

*In re Outsidewall Tire Litig.*,
    4:13-mc-01964 (N.D. Ohio) .................................................................8

*In re Outsidewall Tire Litig.*,
    4:13-mc-01964 (S.D. Tex.) ..................................................................8

*Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.*,
    146 F.3d 66 (2d Cir. 1998)........................................................... 23, 53

*Jane L. v. Bangerter*,
    61 F.3d 1505 (10th Cir. 1995) ...........................................................38

*Jerry Parks Equip. Co. v. Southeast Equip. Co.*,
    817 F.2d 340 (5th Cir. 1987) .............................................................57

*Johnson v. City of Aiken*,
    278 F.3d 333 (4th Cir. 2002) .............................................................40

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .............................................................47

*Jones & Laughlin Steel Corp. v. Pfeifer*,
   462 U.S. 523 (1983) .................................................................................. 21, 53

*Jones v. Southspeak Interactive Corp. of Del.*,
   No. 3:12cv443, 2014 WL 2993443 (E.D. Va. 2014) ..........................................44

*Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*,
   No. 2:07-cv-530, 2009 WL 4841017 (E.D. Va. Oct. 23, 2009) ..........................45

*Martin v. Cavalier Hotel Corp.*,
   48 F.3d 1343 (4th Cir.1995) ................................................................................39

*McAfee v. Boczar*,
   738 F.3d 81 (4th Cir. 2013), *as amended* (Jan. 23, 2014) ............................ 42, 43

*McDonald v. Gen. Motors Corp.*,
   110 F.3d 337 (6th Cir. 1997) ...............................................................................56

*Minter v. Wells Fargo Bank, N.A.*,
   762 F.3d 339 (2014)............................................................................... 23, 56, 57

*MiTile, Ltd. v. Hasbro, Inc.*,
   No. 1:13-cv-451, 2013 WL 5525685 (E.D. Va. Oct. 3, 2013) ...........................51

*Morris Law Office v. Tatum*,
   388 F. Supp. 2d 689 (W.D. Va. 2005) ................................................................47

*Mullins v. Richlands Nat'l Bank*,
   403 S.E.2d 334 (Va. 1991)........................................................................... 47, 57

*New Amsterdam Cas. Co. v. Waller*,
   323 F.2d 20 (4th Cir. 1963) ...................................................................... 56, 57, 58

*Plyler v. Evatt*,
   902 F.2d 273 (4th Cir. 1990) ...............................................................................44

*Premier Bank, Inc. v. Tech. Res., Inc.*,
   No. 1:13-cv-340, 2013 WL 6834380 (E.D. Va. Dec. 23, 2013) ........................51

*Project Vote/Voting for Am., Inc. v. Long*,
    887 F. Supp. 2d 704 (E.D. Va. 2012) ................................................................38

*Randle v. H & P Capital, Inc.*,
    513 F. App'x 282 (2013) ................................................................58

*Robinson v. Equifax Info. Servs., LLC*,
    560 F.3d 235 (4th Cir. 2009) .................................................... *passim*

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    No. CIV. A. 91-0036-C, 1996 WL 537859 (W.D. Va. Sept. 17, 1996) ....... 38, 39

*Rueda v. Clarke*,
    No. 1:14cv699, 2015 WL 1236226 (E.D. Va. Mar. 17, 2015) ...........................57

*Sean v. Okuma Mach. Tool, Inc.*,
    No. CIV. A. 93-3512, 1996 WL 256587 (E.D. Pa. May 8, 1996) ......................32

*Searcy, Denney, Sarola, Barnhart & Shipley, P.A. v. Poletz*,
    652 So.2d 366 (Fla. 1995) ................................................................47

*Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*,
    480 S.E.2d 471 (Va. 1997) .................................................... 36, 44, 47

*Shandong Linglong Rubber Co. v. Tire Eng'g & Distrib., LLC*,
    133 S. Ct. 846 (2013) ................................................................7

*Shell v. Parrish*,
    448 F.2d 528 (6th Cir. 1971) ................................................................56

*Simmons v. Poe*
    47 F.3d 1370 (4th Cir. 1995) .................................................... 22, 23, 28

*Tanenbaum v. Agri-Capital, Inc.*,
    885 F.2d 464 (8th Cir. 1989) ................................................................57

*Taylor v. Mitre Corp.*,
    No. 1:11-CV-1247, 2013 WL 588763 (E.D. Va. Feb. 13, 2013) ......................51

*Tazewell Oil Co. v. United Va. Bank*,
  413 S.E.2d 611 (Va. 1992)..................................................................47

*Tire Engineering & Distribution, LLC v. Al Dobowi Ltd.*,
  2:13-mc-00302 (D.N.J.) ...................................................................8

*Tire Engineering & Distribution, LLC v. Bank of China*,
  12 cv 9208 (S.D.N.Y.), on appeal 13-1519 (2d Cir., argued Oct. 11, 2013)........7

*Tire Engineering & Distribution, LLC v. Indus. & Commercial Bank of China*,
  1:13-cv-06209 (S.D.N.Y.) ...................................................................7

*Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*,
  682 F.3d 292 (4th Cir. 2012) ...........................................................2, 3

*Trimper v. City of Norfolk*,
  58 F.3d 68 (4th Cir.1995) ...................................................................39

*United States v. Lynn*,
  No. 93-5339, 1993 WL 460716 (4th Cir. Nov. 9, 1993) ....................................54

*Univ. Am. Barge Corp. v. J-Chem, Inc.*,
  946 F.2d 1131 (5th Cir. 1991) ...........................................................57

*Venegas v. Mitchell*,
  495 U.S. 82 (1990)...........................................................................48

*Vienna Metro v. Pulte Home Corp.*,
  No. 1:10-cv-00502, 2011 U.S. Dist. LEXIS 158648
  (E.D. Va. Aug. 24, 2011) ...................................................................51

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
  510 F.3d 474 (4th Cir. 2007) ...................................................... 23, 52, 55

*Wainger v. Glasser & Glasser*,
  462 S.E.2d 62 (Va. 1995)...................................................................26

*Williams v. Metro. Life Ins. Co.*,
  609 F.3d 622 (4th Cir. 2010) ...........................................................23

xi

*Won Kim v. U.S. Bank, N.A.*,
    No. 1:12-cv-986, 2013 WL 3973419 (E.D. Va. July 29, 2013) .........................51

**Statutes**

15 U.S.C. § 1117(a) .........................................................................................5

42 U.S.C. § 1988 ..........................................................................................48

VA ST § 54.1-3932 ........................................................................................6

**Rules**

4th Cir. R. 34(e) ...........................................................................................58

Federal Rule of Appellate Procedure 34 .........................................................58

Virginia Rule of Professional Conduct 1.4 ......................................................50

Virginia Rule of Professional Conduct 1.5 ................................................ 29, 30

Virginia Rule of Professional Conduct 1.5(a) ..................................................50

Virginia Rule of Professional Conduct 1.5(a)(3)...............................................50

Virginia Rule of Professional Conduct 1.5(b) ................................. 29, 30, 49, 50

Virginia Rule of Professional Conduct 1.5(c) ........................................... 29, 30

**Other Authorities**

Virginia Legal Ethics Opinion 1812 ...................................................... 33, 49

## COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the district court complied with this Court's mandate when it analyzed the nine *Campbell County* factors and explained how it weighed each factor to determine a *quantum meruit* fee for Gilbert LLP ("Gilbert").

2.    Whether the district court had discretion to deny Gilbert's request for a contingency enhancement as part of its *quantum meruit* fees on the ground that Gilbert agreed at the inception of the engagement to be paid only an unenhanced hourly fee under the foreseen circumstances of this case.

3.    Whether the district court had discretion to substantially reduce Gilbert's claimed hours in light of Gilbert's "kitchen sink" approach, obvious overbilling, and flawed timekeeping, given Gilbert's concession on remand that the district court reasonably could cut Gilbert's hours by almost 40 percent.

4.    Whether the district court was within its discretion when it limited its consideration of the "result secured" factor to its analysis of Gilbert's efficiency in providing legal services, and whether it was required to consider also the value that those services created for the client.

5.    Whether the district court had discretion to consider, in addition to the $26 million judgment, other *Campbell County* factors and results that reflected negatively upon Gilbert's efficiency in providing legal services, and to reduce Gilbert's hours claimed for activities unrelated to the jury verdict.

1

6.      Whether the district court had discretion to rely on the rates charged by similar attorneys for similar work in Northern Virginia when determining Gilbert's *quantum meruit* fees, where Gilbert failed to disclose at the outset of the engagement that it charges higher rates in violation of Virginia Rule of Professional Conduct 1.5(b).

7.      Whether the district court had discretion to reject Gilbert's unauthorized attempt to reopen the record on remand, where this Court remanded this case solely for further legal analysis and did not order the district court to take additional evidence.

8.      Whether the district court had discretion not to enforce as judicial admissions a former Gilbert attorney's legal arguments about the reasonableness of Gilbert's fees, where the district court rejected those arguments, and the arguments were made in a different controversy between different adversaries.

## <u>STATEMENT OF THE CASE</u>

### I.    Background.

The facts regarding the case underlying this fee dispute are set forth in *Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 298-300 (4th Cir. 2012).  The underlying case resulted in a $26 million judgment in favor of Appellee Jordan Fishman ("Fishman") and his companies, Tire Engineering & Distribution, LLC, Bearcat Tire ARL, LLC, and Bcatco

A.R.L., Inc. (collectively "Alpha"). Fishman designed, manufactured, and sold specialized tires for underground mining vehicles. *Id*. at 298. A tire distributor from Dubai ("Al Dobowi") illicitly obtained Fishman's blueprints and recruited a tire manufacturer in China ("Linglong") to manufacture tires based on those blueprints. *Id*. at 299.

### A.      Jordan Fishman Retains Gilbert LLP.

On August 4, 2009, Fishman retained Gilbert, which at the time was named Gilbert Oshinsky LLP, to sue Al Dobowi and Linglong. Gilbert and Fishman executed an engagement agreement (the "Engagement Agreement"), that provides that Fishman would pay a contingency fee of 40 percent of any amount that Gilbert recovers. JA252. It states that "Alpha will not be required to pay any amount to GO [Gilbert Oshinsky LLP] unless Alpha receives a monetary payment through settlement and/or judgment." JA251. In the event that Fishman terminates Gilbert prior to a recovery, Gilbert agreed that it would be limited to standard hourly fees—effectively, it agreed not to seek any compensation for the contingent nature of the work—from money that Fishman recovers more than 12 months after he terminates the firm.

> In the event that Alpha elects to terminate our representation, GO will be entitled to *a fee based upon the hours expended* by the Firm on this representation *at the hourly rates normally charged* by the involved personnel for the type of work rendered. Notwithstanding the foregoing, if Alpha receives a

3

> recovery with respect to the claims that are the subject
> matter of this representation within 12 months after the
> termination of the Firm's representation, the Firm may
> elect to receive a fee that is based upon the amount of the
> contingent fee that the firm would have been entitled to
> as a result of Alpha's recovery under the above-described
> contingency fee arrangement if the Firm's representation
> had not been terminated.

JA252 (emphasis added).   Although the Engagement Agreement refers to "hourly

rates normally charged," Gilbert never disclosed those rates to Fishman.  JA250-

253, JA746-747.

### B.    Jordan Fishman Prevails in the Underlying Litigation.

Since the inception of this case, August Matteis has been lead counsel for

Fishman.  JA736.  In January, 2010, William Copley joined him in representing

Fishman.  *Id*.  Other Gilbert attorneys played less substantial roles in the case.  *Id*.

On October 28, 2009, Fishman and his companies filed separate complaints against

Linglong and Al Dobowi, which the district court consolidated.  JA736.  The

district court granted summary judgment on four of the nine counts in the

complaints, and Fishman proceeded to trial on five counts: (1) violation of the

Copyright Act; (2) violation of the Lanham Act as to registered marks;

(3) violation of the Lanham Act as to unregistered marks; (4) common law

conversion; and (5) common law civil conspiracy.  JA736.  On July 15, 2010, a

jury returned a verdict in Fishman's favor for $26 million.  JA41, 736.

### C.    The District Court Awards Fishman Attorney's Fees Under the Lanham Act.

After the jury verdict, Gilbert prepared a motion seeking attorney's fees from Linglong and Al Dobowi under the Lanham Act, 15 U.S.C. § 1117(a). JA167.  Gilbert sought fees of $2,712,716.00 for 4,987.6 hours of work through trial.  JA170, 208-209.  Matteis (while still at Gilbert) exercised billing judgment to reduce Gilbert's fee demand through trial by $550,148.50.  JA194, 208-209.

On October 18, 2010, the district court granted Fishman's Lanham Act fee motion in part, but it awarded less than Gilbert sought.  JA197.  The district court held that "[d]espite plaintiffs' pre-submission reduction of their billable hours, the 4,987.6 hours figure must still be significantly further reduced."  JA209.  The district court found Gilbert's hourly rates, which ranged from $375 to $850, to be "unreasonably high on their face."  JA212.  It held that "attorneys in this locality can perform the work required in this case competently for between $275 and $400 per hour," and it applied those rates to the 1,959 hours it had approved to award fees of $632,377.50 through trial.  *Id*.

## II.    Jordan Fishman Terminates Gilbert LLP and Retains Weisbrod Matteis & Copley PLLC.

About three weeks after trial, Gilbert's Chairman, Scott Gilbert, dictated that Craig Litherland, rather than Copley, direct Gilbert's post-judgment enforcement efforts for Fishman over strong objections by Matteis and Copley.  JA391.  Mr.

Gilbert dictated this decision while Matteis was on vacation, and without consulting Fishman, Matteis, or Copley. *Id.* The collection efforts that Litherland led were ineffective. JA756-757. Gilbert filed only a single motion to register the judgment in other jurisdictions, which the district court denied without prejudice as inadequately supported. JA391, 757. No one at Gilbert thereafter attempted to file an adequately supported motion. *Id.* As a result, Gilbert never secured a settlement offer from the defendants for more than $1 million, even after the $26 million judgment. JA756-757.

In October 2011, Matteis and Copley left Gilbert with another partner to found their own firm, Weisbrod Matteis & Copley PLLC ("WMC"). JA737. After consulting both firms, Fishman elected to stay with Matteis and Copley, discharged Gilbert, and retained WMC. *Id.* On January 27, 2012, Gilbert filed a "Notice of Former Counsel's Lien" in the district court pursuant to VA ST § 54.1-3932. JA68, 737.

## III. Weisbrod Matteis & Copley PLLC Successfully Defends and Enforces Jordan Fishman's Judgment.

Matteis and Copley briefed the appeal to this Court while at Gilbert, and argued it at WMC. On June 6, 2012, this Court upheld the $26 million judgment based on Fishman's copyright and conversion claims. JA737. This Court also vacated the attorney's fees award to Fishman under the Lanham Act based on its finding that Fishman had not proven a requisite impact on U.S. markets. *Id.* In

6

vacating the fee award, this Court did not reach how the district court had valued Gilbert's fees. *Id*.

Linglong and Al Dobowi thereafter filed a petition for writ of certiorari with the Supreme Court of the United States. WMC prepared and filed an opposition brief on Fishman's behalf. The Supreme Court denied certiorari. *Shandong Linglong Rubber Co. v. Tire Eng'g & Distrib., LLC*, 133 S. Ct. 846 (2013).

Al Dobowi and Linglong, foreign companies with no tangible assets in the United States, refused to pay the judgment. WMC pursued an "arduous, time-consuming" collection effort to enforce Fishman's judgment through proceedings around the country. JA444, 755. WMC filed contested actions in New York against the judgment debtors' banks to compel them to turn over the judgment debtors' assets. *Id.* The cases involved unsettled and hotly-disputed issues of New York banking and judgment enforcement law that WMC litigated through oral argument before the Second Circuit. *See Tire Eng'g. & Distribution LLC v. Bank of China*, 12 cv 9208 (S.D.N.Y.), on appeal 13-1519 (2d Cir., argued Oct. 11, 2013); *Tire Eng'g. & Distribution LLC v. Indus. & Commercial Bank of China*, 1:13-cv-06209 (S.D.N.Y.).

WMC also litigated 12 other lawsuits around the country to enforce garnishments against Linglong's distributors and to pierce through sham intermediaries that Linglong foisted in an attempt to evade the judgment. *See, e.g.,*

7

*In re Outsidewall Tire Litig.*, 4:13-mc-01964 (S.D. Tex.) (against American Omni Trading Co. L.L.C.); *In re Outsidewall Tire Litig.*, 4:13-mc-01964 (N.D. Ohio) (against Atlas Tire Co.); *In re Outsidewall Tire Litig.*, 4:13-mc-01964 (N.D. Ohio) (against Hercules Tire and Rubber Co.); *In re Outsidewall Tire Litig.*, 2:13-mc-00315 (C.D. Cal.) (against Horizon Tire Inc.); *In re Outsidewall Tire Litig.*, 13 MC 249, (D. Ore.) (against Icon Tire Co.); *In re Outsidewall Tire Litig.*, 3:13-mc-00088 (N.D. Tex.) (against Maffeo Tire Group LLC); *In re Outsidewall Tire Litig.*, 2:13-mc-00023 (W.D. Tenn.) (against TBC Corp.); *In re Outsidewall Tire Litig.*, 2:13-mc-00315 (C.D. Cal.) (against Tireco, Inc.); *In re Outsidewall Tire Litig.*, 2:13-mc-00315 (C.D. Cal.) (against Transcontinental Tire Co.); *In re Outsidewall Tire Litig.*, 1:13-mc-22577 (S.D. Fla.) (against Universal Tire International); *In re Outsidewall Tire Litig.*, 1:13-mc-22577 (S.D. Fla.) (against Zafco International Inc.); and *Tire Eng'g & Distrib., L.L.C. v. Al Dobowi Ltd.,* 2:13-mc-00302 (D.N.J.) (against Foreign Tire Sales).

Fishman recovered approximately $546,000 in garnishment proceeds. JA444.  As a result of these actions, Linglong ultimately settled on November 21, 2013—more than two years after Fishman terminated Gilbert—and agreed to pay Fishman an additional $15.5 million to resolve its liability.  JA255, 444.

**IV.    Gilbert LLP Demands that Jordan Fishman Pay Excessive Fees, and then Sues Him.**

As soon as Fishman began receiving proceeds from WMC's judgment enforcement actions, he notified Gilbert and attempted to negotiate a resolution of Gilbert's lien.  He asked Gilbert to specify the fees and expenses that it demanded.  In response, Gilbert demanded $4,542,228.50 in fees and $1,812,149.20 in expenses, for a total of $6,354,377.70.  SA611, 648.  Gilbert provided a spreadsheet that contained 4,648 entries seeking payment for 10,955.8 hours, more than twice what Gilbert previously sought through trial and five times the 1,959 hours that the district court found to be reasonable.  JA451.  The hourly rates it demanded—up to $900 an hour—had not been disclosed to Fishman.  JA739, 250-253.

In an effort to resolve his fee dispute with Gilbert, Fishman provided line-by-line objections to Gilbert's unedited entries for fees and costs.  SA766-909.  He then requested a meeting to discuss the parties' differences.  Gilbert initially agreed, but the meeting never occurred.

On the eve of the parties' scheduled meeting, Gilbert sued Fishman and WMC in the Superior Court for the District of Columbia.  JA280-293.  Prior to filing that lawsuit, Gilbert did not discuss with Fishman its demand for fees and costs, make a counteroffer, edit a single time entry, or even comment on Fishman's proposal.   JA274-278.  Gilbert also sued WMC for tortious interference,

9

conversion, and unjust enrichment because WMC retained the disputed

garnishment proceeds in its IOLTA account.  JA255, 283-286.

## V.    The District Court Originally Values Gilbert LLP's Lien at $1,958,341.67.

Fishman responded to Gilbert's lawsuit in Washington, D.C. by asking the

district court below to determine the value of Gilbert's lien for attorney's fees and

costs.  JA218-247.  He acknowledged that Gilbert was entitled to *quantum meruit*

compensation, but he argued that Gilbert's demands for fees and costs were

excessive.  JA236-242.  After Fishman filed that motion, Gilbert agreed to dismiss

the D.C. Complaint in exchange for more time to prepare its fee request to the

district court below.  *See* JA80, 329.

On January 16, 2014, Gilbert filed a response.  JA330-353.  Despite having

months to prepare, Gilbert submitted no evidence to substantiate the

reasonableness of its hours or rates.  *Id*.  It did not submit an affidavit from a local

attorney.  *Id*.  The district court did not restrict Gilbert's submission of evidence,

and Gilbert did not request more time.  JA82.

The district court below held that Virginia law controls, and that *Heinzman*

*v. Fine, Fine, Legum & Fine*, 234 S.E.2d 282, 286 (Va. 1977), precluded Gilbert

from seeking a contingency fee pursuant to the Engagement Agreement.  JA447-

448.  It then employed a lodestar analysis to determine the value of Gilbert's lien.

JA451-461.  In doing so, the district court stated that it considered the factors in

*Campbell County v. Howard*, 112 S.E. 876, 885 (Va. 1922), holding that "[n]o further adjustment, upward or downward, is warranted by application of the *County of Campbell* factors." JA461 n.23.

The district court held that "the Gilbert law firm has adduced no persuasive evidence to support the reasonableness" of its claimed rates "for a case of this sort in Northern Virginia." JA453. The district court therefore applied rates similar to those awarded by the Eastern District of Virginia in similar cases: "$400 per hour for partners, $350 per hour for counsel, and $275 per hour for associates." JA454.

The district court then held that Gilbert's demanded hours, "on its face, is plainly excessive." JA454. It described Gilbert's fee demand as "clearly a 'kitchen sink' approach in which every one of the 4,648 entries has been thrown in the hopper." JA452. It found that "[c]lose examination of the submitted time entries makes clear that the Gilbert law firm's billing records are rife with flawed entries that make its records inadequate and unreliable for lodestar calculation purposes." JA454. It studied Fishman's line-by-line objections and found them to be accurate and helpful. JA452 n.12.

The district court discussed categories of time that it found excessive or improper, adjusted Gilbert's hours for these deficiencies, and approved compensation for 3,834.25 hours—awarding Gilbert roughly twice the hours it had approved through trial. JA456-461. Applying the adjusted rates it had derived

11

from similar cases, it concluded that "$1,237,720 [is what] the Gilbert law firm can reasonably recover in fees." JA461.

The district court then examined Gilbert's cost records and found that they "reflect the same 'kitchen sink' approach." JA462. It reduced Gilbert's demand for expenses to $720,621.67, combined that with the $1,237,720 it held were reasonable fees, and valued Gilbert's total attorney's lien at $1,958,341.67. JA466. Gilbert appealed. JA468.

## VI. This Court Vacates the Valuation of Gilbert's Lien and Remands for Explanation of How the District Court Applied Relevant *Campbell County* Factors.

Gilbert's primary argument in its first appeal, *In re Outsidewall Tire Litigation*, No. 14-2192 (4th Cir.) ("*Gilbert I*"), was that the district court abused its discretion by "concluding that Gilbert LLP was not entitled to a share of the 40% contingent fee in *quantum meruit*." *See* Gilbert Principal Brief at 15-35, *Gilbert I*. Gilbert secondarily challenged the district court's reduction of its hours and rates. *Id.* at 35-42. Gilbert did not argue that the district court improperly limited its ability to present evidence regarding the reasonableness of its hours and rates. *Id.* Gilbert also challenged the district court's reduction of its costs based on the relevant terms of the Gilbert Engagement Agreement. *Id.* at 44-45.

Although this Court ultimately vacated the district court's valuation of Gilbert's lien, it agreed with much of the district court's analysis. *See Gilbert I*,

636 F. App'x 166 (4th Cir. 2016). This Court agreed that "Virginia law governs Gilbert's recovery" and that *Heinzman* and *Campbell County* govern the assessment of Gilbert's *quantum meruit* fees. *Id.* at 169-170. It agreed that Gilbert's *quantum meruit* fees must be based on the intrinsic value of the services rendered, and not on Fishman's recovery:

> "The result secured by the services of the attorney may likewise be considered; but merely as bearing upon the consideration of the efficiency with which they were rendered, and, in that way, upon their value on a quantum meruit, not from the standpoint of their value to the client."

*Id.* (quoting *Campbell County*, 112 S.E. at 885).

This Court held that the district court "correctly determin[ed] that the contingency fee provision [in the Gilbert Engagement Agreement] was unenforceable." *Id.* It also held that the district court was within its discretion to reject Gilbert's demand for a partial contingency fee. *Id.* at 171 n.4.

This Court found no clear error in the district court's findings of fact or taking of evidence. *See id.* at 169-171. It did not question the district court's factual findings that Gilbert's claimed hours were "plainly excessive" in light of the work performed, the product of an inappropriate "kitchen sink approach," and "rife with flawed entries that make its records inadequate and unreliable." JA454, 461. It likewise found no error in the district court's finding that "Virginia attorneys can competently perform the work necessary in cases of this sort 'for

13

between $275 and $400 per hour.'"  JA454.  Rather, this Court remanded the case

for the district court to address two legal issues.

First, this Court held that "[b]ecause the district court did not explain its

reasoning with respect to the *County of Campbell* factors, it is impossible for us to

review the district court's analysis for an abuse of discretion."  636 F. App'x at

170-171.  This Court instructed that "a district court need not recite and make

express findings as to each and every factor," but a district court must analyze

"relevant factors in detail."  *Id.*  It then identified two *Campbell County* factors that

the district court should have addressed: the "contingent nature of the fee

arrangement" and the "result secured."  *Id.*  This Court made clear that it would not

prejudge how the district court should apply those factors, holding that the "district

court enjoys broad discretion to award attorney's fees based on its first-hand

knowledge of the case."  *Id.* at 171 n.4.  Accordingly, it "decline[d] to issue

instructions for the district court's exercise of its broad discretion."  *Id.*

Second, this Court held that the district court committed reversible error by

applying a *quantum meruit* analysis to Gilbert's lien for costs.  It held that the

district court "did not analyze whether the cost provision was enforceable, and its

failure to consider the cost provision was reversible error."  *Id.* at 172.  This Court

therefore vacated the award of costs and remanded with "instructions to recalculate

14

the cost award after considering the 'costs and expenses' and 'termination provisions' of the engagement agreement." *Id.*

## VII. The District Court Increases the Value of Gilbert's Lien by More than $1 Million and Explains Its Application of the *Campbell County* Factors on Remand.

The district court complied with this Court's instructions. It analyzed Gilbert's demand for costs solely under the Engagement Agreement and awarded Gilbert an additional $1,011,947—increasing Gilbert's lien from $1,958,341 to $2,970,288. JA763. It also devoted 18 pages to explaining how it had weighed each of the nine *Campbell County* factors to value Gilbert's lien for attorney's fees. JA739-757.

After this Court issued its mandate, the district court requested "supplemental briefs that clearly apply the tests elucidated by the Fourth Circuit, both with respect to *quantum meruit* for fees and with respect to the parties' engagement letter for costs." JA473. The order gave Fishman 14 days to file an opening brief, Gilbert 14 days to respond, and Fishman seven days to reply. JA474. Fishman complied by submitting a brief that applied the *Campbell County* factors to the evidence in the record. JA475-506.

Gilbert then attempted to create a new factual record. It submitted hundreds of pages of new exhibits and declarations. JA507-670, SA916-1087. Gilbert also substantially reduced the hours for which it sought fees, conceding that the district

15

court reasonably could cut 4,192 of the 10,955 hours that Gilbert previously demanded that Fishman pay.  JA752.

The district court rejected Gilbert's submission of new evidence as beyond the scope of the mandate and its own briefing order, which "did not direct or permit the parties to submit additional factual material."  JA748.   It further explained that submitting new evidence "would be unfair to [Fishman]," who did not have an adequate opportunity to address Gilbert's new evidence.  *Id.* at n.11.  The district court also found that reopening the factual record "is unnecessary and would be inefficient."  JA748-749 n.11.

The district court then applied all nine of the *Campbell County* factors.  JA741.  The district court explained how four of those factors applied to Gilbert's rates and the remaining five factors applied to Gilbert's reasonable hours.  JA741-757.  The district court paid particular attention to the factors that this Court emphasized in *Gilbert I*, the "contingent nature of the fee arrangement" and the "result secured."  JA744-746, 754-756.

The district court grounded its analysis of "the contingent nature of the fee arrangement" in the actual terms of that arrangement.  The district court acknowledged that a contingency fee agreement could justify a higher *quantum meruit* fee award to an attorney discharged without cause.  JA744.  However, it

16

held that the particular terms of Gilbert's fee agreement with Fishman did not

support such an award:

> Although the parties' Engagement Letter is not
> enforceable here, it points persuasively to the conclusion
> that plaintiffs and the Gilbert Firm knew from the outset
> that if plaintiffs terminated the Gilbert Firm's
> representation prior to completion of litigation—which in
> fact occurred—the Gilbert Firm would be entitled, under
> the terms of the Engagement letter, *only* to an absolute
> fee based on the hours expended.

JA746.

With respect to the "result secured," the district court considered that factor

"merely as bearing upon the consideration of the efficiency with which [the legal

services] were rendered, and, in that way, not from the standpoint of their value to

the client." JA754-755. The district court found that the $26 million judgment

reflected positively on Gilbert's efficiency with respect to the related hours,

holding that "the Gilbert Firm's litigation services related to an important matter

involving a large sum of money; indeed, the dispute resulted in a $26 million

judgment." JA755.

The district court also found that "many of the hours claimed are excessive

and unrelated to the Gilbert Firm's work in securing the $26 million judgment."

JA755. It cited as examples the five of nine "claims that were ultimately

unsuccessful on summary judgment" and Gilbert's "ineffectiveness and

inefficiency" in trying to enforce the judgment. JA755-756. It noted that

17

successor counsel "undertook the arduous, time-consuming effort required to recover on the judgment." JA755. It noted that even post-judgment Gilbert never secured a settlement offer of more than $1 million for Fishman. JA756. It also found that "it was not until plaintiffs terminated the Gilbert Firm and hired WMC to take control of collections that 14 different proceedings across the country were filed, over $500,000 was collected from Linglong's distributors, and Linglong ultimately agreed to pay an additional $15.5 million." JA756-757.

The district court then complied with this Court's instruction to analyze Gilbert's costs under the Engagement Agreement. The district court held that a "reasonableness analysis is inappropriate to determine whether the Gilbert Firm is entitled to the costs" that the parties had specified as recoverable. JA761. It awarded Gilbert an additional $1,011,947.00, thereby increasing Gilbert's total lien from $1,958,341.67 to $2,970,288.67. JA762. Fishman paid $1,011,947.00 to Gilbert, and Gilbert filed this appeal.

## SUMMARY OF ARGUMENT

The district court complied fully with this Court's mandate in *Gilbert I* and acted well within its broad discretion on remand. This Court instructed the district court to consider seemingly relevant *Campbell County* factors to determine Gilbert's reasonable attorney's fees, and the district court explained how each of the nine factors impacted its analysis.

18

Gilbert repeatedly contorts *Gilbert I* to argue that this Court directed the district court to award Gilbert a higher fee based on certain factors. Brief of Appellant ("Gilbert Br.") at 21-28. On the contrary, this Court expressly "decline[d] to issue instructions for the district court's exercise of its broad discretion." *Gilbert I*, 636 F. App'x at 171 n.4. Because the district court complied fully with this Court's mandate, this Court reviews the district court's fee determination only for abuse of discretion.

Gilbert argues that the district court erred when it declined to enhance Gilbert's fee based on "whether or not the fee is absolute or contingent." The district court reasonably declined because Gilbert agreed at the inception of the engagement that it would receive only an unenhanced hourly fee in the foreseen circumstances of this case—*i.e.*, Gilbert is terminated and Fishman recovers money more than 12 months later. Gilbert never tries to explain how it could be entitled to a fee enhancement that it expressly disavowed while it was wooing Fishman as a client. Instead, it argues that this Court prohibited the district court from considering what the parties agreed, but *Campbell County* and *Gilbert I* expressly required the district court to consider the "nature of the fee arrangement" as part of its analysis. *See Gilbert I*, 636 F. App'x at 170.

Gilbert similarly misconstrues *Gilbert I* when it argues that this Court required the district court to enhance its fee based on the value that the $26 million

19

judgment created for Fishman as a "result secured" under *Campbell County*.
Gilbert Br. at 26. This Court and the Supreme Court of Virginia permitted the
district court to consider a "result secured" only "as bearing upon … the efficiency
with which" Gilbert provided legal services, and not "from the standpoint of their
value to the client." *Gilbert I*, 636 F. App'x 170 (quoting *Campbell County*, 112
S.E. at 885).

Gilbert again misconstrues *Gilbert I* when it argues that this Court stripped
the district court of discretion to scrutinize Gilbert's claimed hours for inefficiency,
overbilling, and timekeeping flaws because Gilbert secured the $26 million
judgment for Fishman. Gilbert Br. at 26-28. This Court never suggested that the
district court must ignore *Campbell County* factors that reflect negatively on
Gilbert's efficiency, nor did it preclude the district court from considering Gilbert's
failures as well as its successes. Gilbert essentially conceded the wisdom of the
district court's criticisms of Gilbert's overbilling and "kitchen sink" approach
when Gilbert admitted on remand that the district court reasonably could cut the
firm's hours by almost 40 percent. JA756 n.19.

Gilbert misconstrues both the district court's decision below and *Gilbert I*
when it argues that the district court improperly relied upon fee-shifting cases to
determine that Gilbert's fee should be based on Northern Virginia rather than D.C.
rates. Gilbert Br. at 28-31. The district court acknowledged that it may be more

appropriate to use higher out-of-jurisdiction rates when a client knowingly chooses foreign attorneys with higher rates. JA746. The district court refused to award Gilbert higher rates in this case because Gilbert failed to disclose its rates in violation of Virginia Rule of Professional Conduct ("VRPC") 1.5(b). *Id.* Fishman, an inventor from Florida, had no warning that Gilbert's rates were higher. The district court reasonably refused to impute to Fishman the very information that Gilbert impermissibly withheld.

Gilbert also is wrong when it argues that the district court was required to reopen the record on remand and blindly apply conclusions based on Gilbert's "unrebutted" evidence. Gilbert Br. 32-52. Neither this Court nor the district court directed or permitted the parties to submit additional evidence on remand. JA748. Gilbert's evidence was "unrebutted" because its submission was unauthorized. *Id.* Gilbert argues that a district court always must reopen the factual record when a judgment is vacated, but it is well established that "[o]n remand, the decision on whether to reopen the record should be left to the sound discretion of the trial court." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 551 (1983).

The district court provided Gilbert with an unfettered opportunity to present evidence regarding the reasonableness of its hours and rates before *Gilbert I*, and Gilbert never challenged the adequacy of that opportunity. The mandate rule precludes Gilbert from raising the issue now, and Gilbert cannot demonstrate that

the district court abused its discretion by denying Gilbert a second bite at that same apple. Nor can Gilbert establish that the district court abused its discretion by refusing to enforce a former Gilbert attorney's legal arguments about the reasonableness of Gilbert's fees as judicial admissions by Fishman. Legal arguments are not judicial admissions, particularly when they are rejected by a court and made in a different controversy between different adversaries.

Accordingly, Gilbert cannot demonstrate that the district court abused its broad discretion to determine the firm's *quantum meruit* fees, and this Court should affirm the decision below.

## STANDARDS OF REVIEW

Gilbert's appeal challenges the district court's valuation of its lien for attorney's fees. This Court reviews "fee awards solely for abuse of a district court's discretion." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). "[R]eview of the district court's award is sharply circumscribed." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). "[B]ecause a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong." *Id.*

This Court has held that a district court does not abuse its discretion so long as "reasonable persons can disagree" about its analysis. *See Simmons v. Poe*, 47

F.3d 1370, 1382 (4th Cir. 1995). This Court is "not entitled to disturb a district court's exercise of discretion even though [it] might have exercised that discretion quite differently." *Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir. 1986). This Court reviews the district court's factual findings in support of a fee award for clear error. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010).

This Court "review[s] de novo a district court's interpretation of an appellate mandate." *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 480 (4th Cir. 2007). Where, as here, the mandate does not instruct a district court to take new evidence, a district court's decision whether to reopen the record is reviewed for abuse of discretion. *Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 73 (2d Cir. 1998). This Court likewise "'review[s] the district court's determination as to whether a particular statement constitute[d] a judicial admission … [for] abuse of discretion.'" *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (2014).

## **ARGUMENT**

## I. **The District Court Complied Fully with This Court's Mandate.**

Gilbert's primary argument (at 22-28) is that this Court prejudged how the district court should apply the factors in *Campbell County*, 112 S.E. at 885, and directed the district court to award Gilbert a "much larger fee." On the contrary,

23

this Court merely instructed the district court "*to consider* the *County of Campbell*

factors." *Gilbert I*, 636 F. App'x at 171 (emphasis added).

This Court made clear that it did not—and could not—decide whether the

district court abused its discretion:

> Because the district court did not explain its reasoning
> with respect to the *County of Campbell* factors, it is
> impossible for us to review the district court's analysis
> for an abuse of discretion. … Although a district court
> need not recite and make express findings as to each and
> every factor, its failure to analyze relevant factors in
> detail sufficient to allow for meaningful appellate review
> constitutes legal error.

*Id.* at 170-171.  This Court expressly "decline[d] to issue instructions for the

district court's exercise of its broad discretion."  *Id.* at 171 n.4.  It explained that

such preemptive instructions would contravene controlling precedent:

> It is well established that a district court enjoys broad
> discretion to award attorney's fees based on its first-hand
> knowledge of the case.  *See Robinson v. Equifax Info.*
> *Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); *Hughes*,
> 465 S.E.2d at 834 (noting that an award of fees in
> *quantum meruit* is a determination committed to "the
> sound judicial discretion of the trial judge.")

*Id.*

Gilbert mistakenly relies (at 22) upon this Court's statement that "the

particular circumstances of this case—where Gilbert represented Alpha from initial

pleadings to a $26 million judgment—*suggest* that the contingent nature of the fee

arrangement should have been a significant factor in a quantum meruit *analysis*."

*Id.* at 170 (emphasis added). This Court's use of the term "suggest" confirms that it merely specified topics for the district court to address when it "analyze[d] relevant factors in detail." *Id.* at 171. Gilbert also ignores this Court's unambiguous statement that "[w]e do not decide the propriety of the rates requested by Gilbert or those awarded by the district court." *Id.* at 171 n.4.

On remand, the district court explained how each of the nine *Campbell County* factors informed its determination of either Gilbert's reasonable rates or the firm's hours. JA739-757. It also reconsidered its valuation of Gilbert's costs under the Engagement Agreement and awarded Gilbert an additional $1,011,947.00. JA757-762. This Court's mandate required nothing more.

## II. The District Court Reasonably Exercised Its Broad Discretion When It Applied the *Campbell County* Factors to Calculate Gilbert LLP's *Quantum Meruit* Attorney's Fees.

Gilbert principally argues that the district court abused its discretion in how it analyzed three issues: "whether or not the fee is absolute or contingent," the "result secured," and how the district court applied relevant factors to set a reasonable hourly rate for Gilbert's services. Gilbert Br. at 21-31. The district court's weighing of these factors was well within its broad discretion.

### A.      The District Court Reasonably Declined to Enhance Gilbert's Fee Based on the "Contingent Nature of the Fee Arrangement."

The district court reasonably determined that the "contingent nature of the fee arrangement" does not warrant a fee enhancement.  Contrary to Gilbert's assertion (at 24) that the district court "refused to treat the contingent nature of Gilbert LLP's representation as a relevant factor," the district court addressed that factor at length.  JA744-746.  Gilbert wrongly suggests that the district court denied it a contingency enhancement because it failed to recover money.[1]  Gilbert Br. at 22-23.  Rather, the district court rejected a contingency enhancement primarily because Gilbert agreed in the Engagement Agreement to receive only an ordinary hourly fee under the foreseen circumstances in this case.  JA746.

---

[1] Gilbert bases this argument on a single sentence on page 13 of the district court's opinion, which states: "To begin with, most of the cases cited by the Gilbert Firm in support of its argument that the lodestar should be multiplied by two or three are inapposite, as those cases do not involve a law firm terminated prior to actual recovery seeking an enhancement of a fee award based on *quantum meruit* under Virginia law."  JA745.  The district court merely explained why Gilbert's "cases cited are inapposite as they are class-action common-fund cases" rather than fee disputes between attorneys and their former clients.  *Id.*  Nevertheless, the district court would have been within its discretion to consider Gilbert's failure to effect a recovery.  Under controlling Virginia law, a "fee is contingent upon a recovery of money, and is not … contingent merely upon a settlement or judgment."  *Wainger v. Glasser & Glasser*, 462 S.E.2d 62, 64 (Va. 1995).  Denying a contingency enhancement to attorneys that failed to recover money is consistent with *Campbell County* because in that case the lawyers obtained the litigation objective that triggered the contingency fee.  *See* 112 S.E. at 887 (discussing the "happening of the contingency therein stipulated").  Nothing in *Campbell County* suggests that a contingency enhancement is mandatory where, as here, the discharged firm failed to recover money.

26

### 1.    Gilbert Agreed at the Inception of the Engagement to Be Paid Only an Unenhanced Hourly Fee Under the Circumstances of this Case.

Gilbert does not dispute that it agreed in the "**Termination**" provision in the Engagement Agreement to be paid only an hourly fee at ordinary rates under the foreseen circumstances of this case:

> In the event that Alpha elects to terminate our representation, GO will be entitled to a fee based upon the hours expended by the Firm on this representation at the hourly rates normally charged by the involved personnel for the type of work rendered. Notwithstanding the foregoing, if Alpha receives a recovery with respect to the claims that are the subject matter of this representation within 12 months after the termination of the Firm's representation, the Firm may elect to receive a fee that is based upon the amount of the contingent fee that the firm would have been entitled to as a result of Alpha's recovery under the above-described contingency fee arrangement if the Firm's representation had not been terminated.

JA252.  Gilbert defined 12 months as the threshold for when Fishman's recovery was sufficiently proximate in time to Gilbert's representation to warrant contingency compensation beyond an ordinary hourly fee.  *Id.*  Fishman terminated Gilbert in October 2011.  Gilbert Br. at 6.  He did not settle with Linglong until November 21, 2013, 25 months later.  JA255; Gilbert Br. at 7.  In short, it was the "nature of the fee arrangement" that in these foreseen circumstances, Gilbert agreed to be paid only an unenhanced hourly fee.

**2.    The District Court's Decision to Give Effect to the Fee Limitations to Which Gilbert Agreed Is Consistent with *Gilbert I* and Virginia Law.**

Gilbert does not try to explain how limiting it to the unenhanced hourly fees that it agreed to accept under the foreseen circumstances in this case could be so unreasonable that it abuses the district court's broad discretion. Certainly, the district court's analysis is not beyond the bounds of what "reasonable persons could disagree." *Simmons*, 47 F.3d at 1382. Gilbert itself argued in its Principal Brief in *Gilbert I*, on page 22 n.1, that the district court should base its *quantum meruit* fee determination primarily on what "[a]t the inception of this case, all parties agreed…."

Gilbert tries to avoid its promise not to seek an enhanced fee by contorting *Gilbert I* as a mandate to ignore the Engagement Agreement. Gilbert Br. at 24-25. As discussed above, this Court engaged in no such prejudgment, which would trample the "well-established" rule that this Court is "not entitled to disturb a district court's exercise of discretion even though [it] might have exercised that discretion quite differently." *Daly*, 790 F.2d at 1079.

This Court instructed the district court to analyze the "contingent nature of the fee arrangement." *Gilbert I*, 636 F. App'x at 170. This Court also quoted *Campbell County* to direct that a court should consider "whether or not the fee is absolute or contingent." *Campbell County*, 112 S.E. at 885. These instructions at

28

least permitted the district court to examine the actual terms of "the fee arrangement" and determine that "the Gilbert Firm would be entitled, under the terms of the Engagement Letter, *only* to an absolute fee based on the hours expended." JA746.

Gilbert tries to bolster its argument by pointing out that "Alpha argued this same point" in *Gilbert I*, and inferring that this Court must have rejected it. Gilbert Br. at 24. Yet, this Court expressly declined to reach the merits of this issue and reserved it for the district court's "broad discretion." *Gilbert I*, 636 F. App'x at 171 n.4.

The district court's consideration of the fee limitations in the Engagement Agreement also is supported by VRPC 1.5, which limits a lawyer to fees that he or she discloses, and that the client agrees to pay. VRPC 1.5(b) prohibits a firm from seeking a fee that it failed to explain in detail at the inception of the engagement:

> The lawyer's fee shall be adequately explained to the client. When the lawyer has not regularly represented the client, the amount, basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

VRPC 1.5(c) similarly requires lawyers to explain how any contingency fee will be triggered and calculated:

> A contingent fee agreement shall state in writing the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the

29

> lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

Gilbert explained in writing that it would be paid only an hourly fee if Fishman did not obtain a recovery within 12 months of terminating the firm, and Gilbert violated both VRPC 1.5(b) and (c), as well as its agreement with Fishman, by seeking more.

The district court's decision similarly is consistent with *Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d 282 (Va. 1977). Gilbert invokes *Heinzman* without citing it when it inaccurately asserts that this "Court ruled that the fee agreement was inoperative because Gilbert LLP had been discharged without cause and its fee must be determined based on *quantum meruit*." Gilbert Br. at 24.

As an initial matter, VRPC 1.5 makes the fee limitations to which Gilbert agreed at the inception of the relationship relevant regardless of whether the Engagement Agreement is "inoperative." Moreover, this Court merely quoted *Heinzman* to hold that Gilbert could not enforce the Engagement Agreement to obtain a contingency fee. *Gilbert I*, 636 F. App'x at 169-170. Nothing in *Heinzman* mandated that the district court ignore fee limitations to which Gilbert agreed while wooing a client as part of a *quantum meruit* analysis.

30

The district court acknowledged that the "Engagement Letter is not enforceable here." JA746. It also correctly recognized that the nature of the fee arrangement remained relevant to a *quantum meruit* analysis:

> it points persuasively to the conclusion that plaintiffs and the Gilbert Firm knew from the outset that if plaintiffs terminated the Gilbert Firm's representation prior to completion of litigation—which in fact occurred—the Gilbert Firm would be entitled, under the terms of the Engagement Letter, *only* to an absolute fee based on the hours expended.

JA746. This holding is consistent with *Heinzman*, 234 S.E.2d at 285-286, which focused on protecting clients when it held that an attorney discharged prior to obtaining a recovery could not recover a contingency fee as breach of contract damages. Indeed, the Supreme Court of Virginia grounded *Heinzman* in the inherent inequality when an attorney negotiates a fee agreement with a client:

> Seldom does a client stand on equal footing with an attorney in the bargaining process. Necessarily, the layman must rely upon the knowledge, experience, skill, and good faith of the professional. … The attorney-client relationship is founded upon trust and confidence….

*Heinzman*, 234 S.E.2d at 285.

Thus *Heinzman* recognized that clients have more, not fewer, protections than ordinary contracting parties. *Id.* at 285-286. Gilbert's attempt to abuse *Heinzman* as a license to seek fee enhancements that it expressly disavowed at the

inception of the engagement perverts *Heinzman* and is contrary to what the

Supreme Court of Virginia sought to accomplish.

### 3. The Fee Limitation that Gilbert Accepted at the Inception of the Engagement Does Not Confer a Windfall upon Fishman.

The district court below correctly rejected Gilbert's argument that a

contingency enhancement is necessary to avoid conferring a windfall upon

Fishman.  Virginia law prohibited the district court from basing Gilbert's fees on

Fishman's recovery.  *Heinzman* held that "a quantum meruit determination looks

to 'the reasonable value of the services rendered, not in benefit to the client, but, in

themselves.'"  234 S.E.2d at 286 n.4.  *Campbell County* imposes the same

limitation.  112 S.E. at 885-886.[2]

---

[2] Gilbert's argument that the district court erred by not enhancing Gilbert's lodestar fees to prevent a "windfall" to WMC fails for additional reasons.  Gilbert has no claim against WMC.  None of the *Campbell County* factors implicate the client's fee agreement with successor counsel.  *See* 112 S.E. at 876.  WMC's fee agreement is not part of this record, and the reasonableness of WMC's fee is not an issue before this Court because Fishman does not contest WMC's fee.  *See Sean v. Okuma Mach. Tool, Inc.*, No. CIV. A. 93-3512, 1996 WL 256587, at *3 (E.D. Pa. May 8, 1996) (holding that defendant "had no standing to complain of the excessiveness of the fee arrangement between plaintiffs and their counsel").  If WMC contracted with Fishman for a contingency fee, it did nothing wrong.  WMC put in years of "arduous" and "time-consuming" work to obtain a recovery that, at the time of engagement, was very much uncertain.  JA754-755.  Because *Heinzman* envisioned that a client would need to retain successor counsel under a contingency fee arrangement, it limited discharged attorneys to *quantum meruit* to avoid "risking the payment of *double contingent fees.*'"  234 S.E.2d at 286 (emphasis added).

Gilbert's "windfall" argument is based on the false premise that Fishman

agreed to pay Gilbert a contingency fee under the circumstances of this case:

> [P]laintiffs would not benefit from a windfall in the
> absence of an enhancement to the Gilbert Firm's fee
> award because unlike in *Kidd*, plaintiffs' agreement with
> the Gilbert Firm—the Engagement Letter—not only
> included a provision for a contingency fee, but also made
> clear that in the event plaintiffs terminated the Gilbert
> Firm's representation, the Gilbert Firm would be paid
> according to an hourly rate.

JA746.

Gilbert continues to misplace reliance upon hypotheticals regarding clients

discharging their attorneys on the eve of a recovery to argue that the district court's

decision "would create perverse economic incentives for clients and counsel to use

the power of termination to deprive contingency counsel of the fruits of its efforts."

Gilbert Br. at 27-28 and n.9.  Such hypotheticals do not resemble the facts of this

case.  As the district court was intimately aware, the judgment enforcement against

the underlying defendants in Dubai and China required years of "arduous" and

"time-consuming" litigation in 14 different proceedings, including through oral

argument before the Second Circuit.  JA737-738.

The district court's decision is consistent with Virginia Legal Ethics Opinion

("LEO") 1812, which opines that the hypothetical Gilbert raises will justify an

exception only in "extreme cases where the client terminates the representation at

the last moment before accepting an award …with the attorney's work

33

substantially performed and the client in bad faith attempting to circumvent the

contractual agreement." In this case, Gilbert has not alleged or presented any

evidence of bad faith, and Fishman terminated Gilbert more than two years prior to

any recovery. JA507-670, 746, 755. Gilbert—not the district court—defined 12

months as the test for how close in time Fishman's recovery must be to the firm's

termination to warrant more than an ordinary hourly fee. JA746. Gilbert therefore

cannot show that it was unreasonable for the district court to deny it an enhanced

fee based on Fishman's recovery 25 months later.

> ### B.   The District Court Did Not Abuse Its Discretion When It Evaluated the Efficiency of Gilbert's Services Based on the Positive and Negative Results that the Firm Secured.

> #### 1.   The District Court Correctly Limited Its Analysis of the "Results Secured" to the Evaluation of Gilbert's Efficiency in Providing Legal Services.

Gilbert argues that the district court contravened this Court's mandate when

it held that "the 'result secured' should bear only 'upon the consideration of the

efficiency with which [the services] were rendered, and … not from the standpoint

of their value to the client.'" Gilbert Br. at 26. Yet even as Gilbert accuses the

district court of error, it notes that the district court *was quoting Campbell County*.

*Id.* (citing "J.A. 754-755 (quoting *Campbell Cnty.*, 112 S.E. at 885)").

Gilbert in effect accuses this Court of ordering the district court to

contravene a century of black-letter Virginia law when it argues that "Alpha had

raised these exact arguments" and this "Court rejected those arguments."  Gilbert
Br. at 26.  Contrary to Gilbert's argument, this Court identified *Campbell County*
as controlling and, like the district court below, quoted it for the exact rule that
Gilbert challenges.  *Gilbert I*, 636 F. App'x at 170 (quoting *Campbell County*, 112
S.E. at 885)).  The Supreme Court of Virginia in *Heinzman* likewise defined
*quantum meruit* as "the reasonable value of the services rendered, *not in benefit to
the client*, but in themselves."  234 S.E.2d at 286 n.4.  The district court did not
abuse its discretion by heeding a century of black-letter Virginia law that this Court
ordered it to obey.

> **2.    The District Court Reasonably Considered the
>         Results Secured Along With Four Other Relevant
>         *Campbell County* Factors to Analyze Gilbert's
>         Efficiency.**

Gilbert asserts (at 26) that "the district court refused to give any weight to
the $26.63 million judgment."  But the district court expressly gave the judgment
weight, stating that "Gilbert's services related to an important matter involving a
large sum of money; indeed, the dispute resulted in a $26 million judgment in
favor of plaintiffs."  JA755.  The district court also explained that the "results
secured" was one of five *Campbell County* factors that were relevant to Gilbert's
reasonable hours, and the judgment was one of several relevant "results secured"
that reflected upon Gilbert's efficiency.  JA749-757.  It then applied all of the

relevant factors "based on the court's (i) familiarity with this case and (ii) years of experience with litigation of this sort." JA756.

Gilbert conceded on remand that the district court was justified in substantially reducing Gilbert's claimed hours and validated the district court's criticisms of its overbilling, inefficiency, and flawed timekeeping. It acknowledged repeatedly that the district court reasonably could cut the firm's hours by almost 40 percent, reducing its hours demand by 4,192 from 10,955 to 6,763. JA521-522, 747-748, 752-753. The district court noted that Gilbert's proposed reduction approximated the district court's reduction for flawed time entries and overbilling.[3] JA752 n.17.

Gilbert also failed to meet its burden to substantiate the reasonableness of the hours it sought. Gilbert bore the burden to establish that its hours were reasonable and that it had exercised "billing judgment." *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 480 S.E.2d 471, 473 (Va. 1997). The district court afforded Gilbert an unfettered opportunity to submit evidence regarding the reasonableness of its hours prior to the first appeal, yet Gilbert submitted no such evidence. It filed one affidavit by Craig Litherland that did not address the reasonableness of Gilbert's claimed hours. JA354-356.

---

[3] The district court then went on to make additional reductions to address other considerations, such as Gilbert's pursuit of unsuccessful claims and ineffective post-trial judgment enforcement efforts. JA755-757.

The district court explained over ten pages how five of the nine *Campbell County* factors supported reductions to Gilbert's hours.  JA747-757.

> The relevant *County of Campbell* factors to be applied to the number [of] hours are as follows: (i) "the amount and character of the services rendered"; (iii) "the labor, time, and trouble involved"; (iv) "the character and importance of the matter in which the services are rendered"; (v) "the amount of money or the value of the property to be affected"; and (ix) "[t]he result secured."

JA749 (quoting *Campbell County*, 112 S.E. at 885).

With respect to factors (i) and (iii), the district court held that "[c]lose examination of the Gilbert Firm's time entries reveals that flaws in the Gilbert Firm's time entries prevent a fair and confident assessment of the amount and quality of services rendered by the Gilbert Firm."  JA749.  Because Gilbert "failed to provide adequate evidence of reasonable fees," the district court appropriately exercised judgment based on its knowledge of the case and litigation experience. *In re Botero-Paramo*, 483 F. App'x 779, 788 (4th Cir. 2012); *see also Robinson*, 560 F.3d at 243.

In this case, the district court identified numerous categories of improper billing and overbilling, and every reduction it made was supported by precedent. JA751-752.  It held that Gilbert overbilled Fishman given the nature and duration of the litigation, and that the firm's flawed timekeeping obfuscated the extent of

37

that overbilling. JA749-750. Gilbert even billed Fishman for time that its

attorneys spent on other matters for other clients. *Id.*

The district court therefore appropriately relied upon its own extensive

knowledge of the case and its observation of the legal services rendered to analyze

Gilbert's flawed entries. As the district court noted, the reductions to Gilbert's

hours are consistent with how other district courts have reduced claimed hours for

similar reasons. JA751-752; *see also, e.g., Amato v. City of Saratoga Springs*, 991

F. Supp. 62, 66 (N.D.N.Y. 1998) (reducing hours by 90 percent for "grossly

inadequate specificity" and overbilling); *Bishop v. Colvin*, No. RDB-13-519, 2014

WL 2093950, at *3 (D. Md. 2014) (reducing hours by 20 percent); *Citizens for

Responsibility & Ethics in Wash. v. United States Dep't of Justice*, 825 F. Supp. 2d

226, 230 (D.D.C. 2011) (reducing hours by 37.5% for "unacceptable timekeeping

habits" and overbilling).

The district court also reasonably reduced Gilbert's claimed hours for travel

time. JA753; *see Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir. 1980) ("we are

disinclined to compensate an attorney at professional rates for travel time"); *Jane

L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995); *Project Vote/Voting for Am.,

Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012) (holding that failure to

reduce fees for travel time "indicates a lack of billing judgment"); *Rosenberger v.

Rector & Visitors of Univ. of Va.*, No. CIV. A. 91-0036-C, 1996 WL 537859, at *6

(W.D. Va. Sept. 17, 1996) (awarding one-fifth of hourly rate for travel time); *Dameron v. Sinai Hosp. of Balt., Inc.*, 644 F. Supp. 551, 559 (D. Md. 1986) (holding that "to pay an attorney top dollar for travel time is unreasonable").

The district court also reduced Gilbert's hours for multiple attorneys to attend hearings and depositions. This Court repeatedly has upheld fee reductions on this basis. *See, e.g., Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1360 (4th Cir.1995) (upholding reduction for "attorney [who] examined no witnesses at trial and had no active participation"); *Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir.1995) (holding that "reducing allowable hours because of overstaffing ... falls soundly within the district court's proper discretion"); *Goodwin v. Metts*, 973 F.2d 378, 383 (4th Cir.1992) (upholding reduction for "the use of three to four lawyers in the action when one or two would have sufficed").

The district court then turned to the "results secured," *Campbell County* factor (ix), as its primary focus, along with two other interrelated *Campbell County* factors, the importance of the matter (iv) and the "amount of money" at issue (v). The district court expressly credited that "the Gilbert Firm's litigation services related to an important matter involving a large sum of money; indeed the dispute resulted in a $26 million judgment in favor of plaintiffs." JA755. Beyond making cuts for improper timekeeping and obvious overbilling as discussed above, the

district court gave Gilbert full credit for the hours it spent that were reasonably related to procuring the judgment.

Gilbert's real complaint is that the district court also considered other less successful "results secured" by Gilbert and scrutinized Gilbert's efficiency in providing legal services unrelated to the judgment. The district court had discretion to consider Gilbert's litigation failures as well as its successes. *Campbell County* instructs courts to consider such results "as bearing upon the … efficiency with which [the attorney's services] were rendered." 112 S.E. at 885 (emphasis added). This Court has held repeatedly that district courts "should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244; *Grissom v. The Mills Corp.,* 549 F.3d 313, 321 (4th Cir. 2008); *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002).

In particular, the district court reasonably rejected Gilbert's attempt to invoke the judgment to insulate from scrutiny time entries for unrelated work. For example, "many time entries relate to claims that were ultimately unsuccessful on summary judgment," including in particular "misappropriation of trade secrets." JA755. The district court emphasized that "these entries reflect time unrelated to the copyright result secured." JA755.

The district court's other significant cuts pertained to the "excessive amount of post-trial hours claimed by the Gilbert Firm." JA756. In this case, the district

court entered the $26 million judgment on July 19, 2010, approximately eight months after the case was filed on October 10, 2009. JA8, JA41. The Gilbert Firm continued to represent Fishman for another 15 months. JA737. The $26 million judgment has no bearing on the efficiency with which Gilbert provided services post-trial, and the district court reasonably determined that Gilbert's post-trial hours were excessive, particularly with respect to Gilbert's ineffective judgment enforcement efforts. JA756.

Shortly after the trial, Gilbert's Chairman, Scott Gilbert, mandated that a different Gilbert attorney, Craig Litherland, lead the firm's efforts to enforce Fishman's $26 million judgment rather than Matteis or Copley, and those efforts were ineffective. JA391, JA756 n.20. Under Mr. Litherland's direction, Gilbert filed only a single motion to register the judgment in other jurisdictions, which the district court denied without prejudice as inadequately supported. JA757.

The district court reviewed Gilbert's post-trial hours and found them excessive given the results they produced. It found that "of the 10,955 hours claimed, only 4,897.6 relate to work completed up to the end of trial." JA756. It then found that many of Gilbert's hours pertained to ineffective and inefficient judgment enforcement work that produced no results. JA756. The district court found that WMC, not Gilbert, secured Fishman's recovery through "a vigorous and wide-ranging collection effort" that encompassed two years of "arduous, time-

41

consuming" litigation in 14 different proceedings, including a case litigated all the way through oral argument before the Second Circuit.  JA737-738, 755.  It also found that "it is difficult to see how the collection efforts by the Gilbert Firm were either substantial or effective in the result ultimately secured *by WMC*, not the Gilbert Firm."  JA756.

Despite billing substantial hours, Gilbert made no credible attempt to enforce the judgment, much less tangible progress.  "A district court 'has discretion to consider settlement negotiations in determining the reasonableness of fees….'"  *McAfee v. Boczar*, 738 F.3d 81, 90 (4th Cir. 2013), *as amended* (Jan. 23, 2014).  As the district court noted, "[t]he fact that Linglong never offered more than $1 million to settle this case while the Gilbert Firm represented plaintiffs demonstrates the ineffectiveness and inefficiency of the Gilbert Firm's collection efforts."  JA756 n.20.  Based on these facts, the district court was well within its broad discretion to reduce Gilbert's post-trial hours in light of Gilbert's "ineffectiveness and inefficiency."  *Id*.

### C.     The District Court Reasonably Determined Gilbert's *Quantum Meruit* Rates Based on the Relevant *Campbell County* Factors.

The district court reasonably based the hourly rate it used to calculate Gilbert's *quantum meruit* fees on three *Campbell County* factors: "(ii) 'the responsibility imposed'; (vi) 'the professional skill and experience called for';

[and] (vii) 'the character and standing in their profession of the attorneys.'"

JA743.  Gilbert cannot establish that the district court abused its discretion in

finding Gilbert's claimed hourly rates of up to $900 excessive, because this Court

has held that hourly rates of $585 for a partner and $365 for a senior associate

"would appear excessive to almost any lay observer, and some members of the

judiciary would deem them exorbitant."  *McAfee*, 738 F.3d at 91.

> **1.** **The District Court Reasonably Applied the *Campbell County* Factors to Determine a Reasonable Hourly Rate.**

The district court reasonably applied the relevant *Campbell County* factors—

the responsibility imposed, the attorneys' professional skill, and their standing in

the profession—based on its own experience and precedent from similar cases to

determine a reasonable hourly rate for Gilbert.  JA742-747. Gilbert raises two

conflicting challenges.  It first argues that the district court erred by considering the

rates that the Eastern District of Virginia has awarded to similarly skilled attorneys

for similar work in fee-shifting cases.  Gilbert Br. at 28-31.  Then it argues that the

district court abused its discretion by not basing Gilbert's rates on two outlier fee-

shifting cases awarding higher rates.  *Id.* at 42-43.  Neither argument has merit.

As an initial matter, the district court was permitted to base its application of

the *Campbell County* factors on its own experience and relevant precedent.

Virginia law required Gilbert as a discharged law firm to "establish, as an element

43

of [its] prima facie case, that the fees charged to the client are reasonable."

*Seyfarth, Shaw*, 480 S.E.2d at 473.  As a result, Gilbert was required to present

evidence that its claimed rates are reasonable:

> In addition to the attorney's own affidavits, the fee
> applicant must produce satisfactory "specific evidence of
> the prevailing market rates in the relevant community"
> for the type of work for which he seeks an award.

*Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).  The district court provided

Gilbert with an unfettered opportunity to present evidence in support of its fees

prior to *Gilbert I*.  Gilbert submitted a single affidavit from one of its attorneys,

Craig Litherland, that offered no defense of Gilbert's claimed rates.  JA354-356.

Where, as here, the party seeking fees "failed to provide adequate evidence

of reasonable fees, a district court may rely on its own expertise in determining a

reasonable hourly rate."  *In re Botero-Paramo*, 483 F. App'x at 788.  The district

court applied the *Campbell County* factors based on its experience, and the rates it

awarded are consistent with rates awarded to attorneys of similar skill, experience,

and standing in the profession in similar matters.  *See* JA742-743, discussing *Jones

v. Southspeak Interactive Corp. of Del.*, No. 3:12cv443, 2014 WL 2993443, at *7

(E.D. Va. 2014) (reasonable hourly rate for experienced counsel was $420 based

on extensive evidence regarding market rates); *Auto. Fin. Corp. v. EEE Auto Sales,

Inc.*, No. 1:10-cv-1407, 2011 WL 3422648, at *8 (E.D. Va. Aug. 3, 2011) (finding

reasonable rates are "$335-380 for a partner with 18 or more years of experience

and $250 for an associate with five to seven years of experience"); *Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, No. 2:07-cv-530, 2009 WL 4841017, at *7 (E.D. Va. Oct. 23, 2009) (holding that "a rate of $350/hour would be reasonable " in a complex commercial case for a "law firm partner with 15 years of experience"); *Alford v. Martin & Gass, Inc.*, No. 1:08-cv-595, 2009 WL 2447936, at *5 (E.D. Va. Aug. 3, 2009) ($350 per hour reasonable for experienced counsel). The district court expressly acknowledged that these cases are merely instructive. JA743.

Based on these cases and the district court's own experience, the district court found that the rates it had set before—"$400/hour for partners, $350/hour for counsel, and $275/hour for associates"—are an appropriate starting place based on the "level of experience, skill, and commitment required to carry out the representation at issue." JA743. The district court then considered the Gilbert attorneys' "standing in their profession," and found that Gilbert failed to present any evidence to support a fee enhancement. "Importantly, the Gilbert Firm has offered no additional proof that its attorneys have standing in their profession that would justify rates higher than the rates charged by similarly situated attorneys in Northern Virginia." JA744.

## 2.    The District Court Did Not Improperly Rely Upon Fee-Shifting Cases.

Gilbert argues (at 28-31) that the district court erred when it found that "the reasonable rates awarded to attorneys in Northern Virginia in the fee-shifting context are instructive—although not dispositive—as those rates are grounded in considerations of the attorneys' experience, skill, and commitment."  Gilbert Br. 28-31.  Gilbert misconstrues *Gilbert I* as forbidding district courts from considering fee-shifting cases for any purpose when deciding *quantum meruit* fee disputes.  In context, this Court merely instructed the district court that the *Campbell County* factors control and to be mindful of potential differences in the contexts of the two types of cases.

This Court did "remind the district court that this is not a fee-shifting case … and that under *County of Campbell* it must consider the 'skill and experience called for' and the attorney's 'standing in their profession.'" *Gilbert I*, 636 F. App'x at 171 n.4.   It also instructed the district court to be mindful of a specific difference—that "when a litigant *selects* a firm with higher rates, that firm may be entitled to a larger fee in *quantum meruit* (depending, of course, on the balance of all the factors)."  *Id.*  Yet it made clear that it was not prohibiting consideration of fee-shifting cases when it cited *Robinson*, 560 F.3d at 243, a fee-shifting case, two

sentences earlier. *Gilbert I*, 636 F. App'x at 171 n.4.[4]   Indeed, the categorical ban

on considering fee-shifting precedents that Gilbert ascribes to this Court is contrary

to controlling Virginia law and makes no sense.

The Supreme Court of Virginia has applied fee-shifting authorities to decide

fee disputes, and *vice versa*.  In *Seyfarth, Shaw*, 480 S.E.2d at 473, it determined

the kinds of evidence a discharged law firm in a fee dispute must present to

establish the reasonableness of its hours and rates based on two fee-shifting

cases—*Mullins v. Richlands Nat'l Bank,* 403 S.E.2d 334 (Va. 1991), and *Tazewell*

*Oil Co. v. United Va. Bank,* 413 S.E.2d 611 (Va. 1992).  Shortly thereafter, the

Supreme Court of Virginia held that its prior ruling in *Seyfarth*, a fee dispute case,

was controlling in a fee-shifting case, *Chawla v. Burgerbusters, Inc.*, 499 S.E.2d

829, 833 (Va.1998).

The *Campbell County* factors that govern *quantum meruit* fee awards in

Virginia are virtually the same as the *Johnson v. Georgia Highway Express*, *Inc.*,

488 F.2d 714 (5th Cir. 1974), factors that federal courts have applied in the fee-

shifting context.  *See Morris Law Office v. Tatum,* 388 F. Supp. 2d 689, 715 (W.D.

---

[4] Gilbert also misplaces reliance (at 29-30) upon *Searcy, Denney, Sarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 368-69 (Fla. 1995), and *Buckley Towers Condo, Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 666 n.10 (11th Cir. 2013) (applying Florida law).  *Heinzman* specifically rejected the breach of contract theory under Florida law that forms the basis for these decisions, which allow discharged attorneys to recover contingency fees and are irreconcilable with the central holding in *Heinzman*, 234 S.E.2d at 285.

Va. 2005) (comparing factors). Gilbert does not purport to identify a material difference.

Gilbert misrepresents *Venegas v. Mitchell*, 495 U.S. 82, 88-90 (1990), as "rejecting the proposition that the standards applicable under fee-shifting statutes are controlling or even helpful guidance" in fee disputes. Gilbert Br. at 30. In *Venegas*, the plaintiff retained an attorney to bring a Section 1983 claim and agreed to pay a 40-percent contingency fee. 495 U.S. at 84. The attorney recovered $2.08 million in damages and an additional $117,000 for attorney's fees. *Id.* at 85. The plaintiff argued that a statutory fee-shifting provision, 42 U.S.C. § 1988, limited his lawyer to the fees awarded by statute. *Id.* The Supreme Court disagreed, holding merely that "§ 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Id.* at 90. Nothing in the *Venegas* decision supports Gilbert's argument that a district court deciding a fee dispute cannot take persuasive guidance from how other courts have applied identical factors in similar circumstances. *Id.*

Importantly, the district court did not rely upon fee-shifting cases to decide whether Northern Virginia or District of Columbia rates should be the foundation for Gilbert's fees: "the fact that plaintiffs *chose* the Gilbert Firm*, as distinct from parties in fee-shifting cases* who do not choose the opposing counsel whose fees they ultimately must pay, does not support a conclusion that the Gilbert Firm is

entitled to the excessive hourly rates it now seeks." JA746 (emphasis added). The

district court relied on Northern Virginia rates because Gilbert was ethically

required—but failed—to disclose to Fishman that it was "a firm with higher rates"

at the inception of the engagement:

> This is so because the Engagement Letter failed to
> disclose to plaintiffs the rates the Gilbert Firm now seeks,
> or even *any* hourly rates for any Gilbert Firm attorneys
> who might work on the case. Thus, plaintiffs had no
> notice—or any other reason to believe—that they had
> selected a law firm that charges rates higher than the
> rates charged by similarly situated attorneys in Northern
> Virginia of a similar level of experience, skill, and
> commitment required to carry out the representations at
> issue. Indeed the record provides no basis for concluding
> that plaintiffs understood that they had chosen a law firm
> that would charge rates as high as $900/hour.

JA746-747.

VRPC 1.5(b) required Gilbert to disclose its rates: "the rate of the fee shall

be communicated to the client, preferably in writing, before or within a reasonable

time after commencing the representation." It is undisputed that Gilbert failed to

do so. JA746. The district court did not rewrite or "blue pencil" the Engagement

Agreement, as Gilbert wrongly contends. Gilbert Br. at 25 n.6. It reasonably gave

effect to VRPC 1.5(b) as the controlling Virginia ethics rule. *See* Virginia Legal

Ethics Opinion 1812 (opining that termination provisions providing for an

alternative hourly fee are "permissible in contingent fee contracts" under

*Heinzman*, 234 S.E.2d at 285-286, on the condition that "the alternative fee arrangement must be adequately explained to the client (Rule 1.4 and 1.5(b))").

Under the circumstances of this case, the district court's decision was more than reasonable. Fishman is a tire designer from Florida. As a layman, he had no reason to suspect that Gilbert's rates were substantially higher than those charged by comparable firms in Northern Virginia. Gilbert's failure to comply with VRPC 1.5(b) thus deprived Fishman of the very information that Gilbert asked the district court to impute to him—that Gilbert charged substantially higher rates.

Additionally, *Heinzman* directed the district court to determine *quantum meruit* fees based not only on *Campbell County*, but also on the VRPC that "formalizes the reasonable fee standards enunciated in County of Campbell." 234 S.E.2d at 286 n.4. That rule currently is VRPC 1.5(a) and it requires a court to consider "the fee customarily charged *in the locality* for similar legal services." VRPC 1.5(a)(3) (emphasis added). Thus the district court's consideration of Northern Virginia rates was fully consistent with *Heinzman* and controlling Virginia ethics rules.

> **3.    The District Court Did Not Abuse Its Discretion by Declining to Base Gilbert's Hourly Rate Upon the Outlier Fee-Shifting Cases that Gilbert Prefers.**

Gilbert undermines its own argument that the district court was prohibited from considering fee-shifting cases by relying on two such cases itself. *See* Gilbert

Br. at 42-43, citing *Vienna Metro v. Pulte Home Corp.*, No. 1:10-cv-00502, 2011 U.S. Dist. LEXIS 158648 (E.D. Va. Aug. 24, 2011); *MiTile, Ltd. v. Hasbro, Inc.*, No. 1:13-cv-451, 2013 WL 5525685 (E.D. Va. Oct. 3, 2013). Gilbert cannot establish an abuse of discretion merely by showing that another court approved higher rates. Even this Court is "not entitled to disturb a district court's exercise of discretion even though [it] might have exercised that discretion quite differently." *Daly*, 790 F.2d at 1079. The cases that Gilbert cites are outliers, and other courts in the Eastern District of Virginia since have awarded rates similar to what the district court awarded to Gilbert. *See Premier Bank, Inc. v. Tech. Res., Inc.*, No. 1:13-cv-340, 2013 WL 6834380, at *8 (E.D. Va. Dec. 23, 2013) (adopting rates set by district court below); *Taylor v. Mitre Corp.*, No. 1:11-CV-1247, 2013 WL 588763, at *3 (E.D. Va. Feb. 13, 2013) (reducing rates from $345-$695 to $224.25- $450); *Won Kim v. U.S. Bank, N.A.*, No. 1:12-cv-986, 2013 WL 3973419, at *4 (E.D. Va. July 29, 2013) (reducing rate from $500 to $380). These cases confirm that the rates that the district court used were well within its broad discretion.

## III. The District Court Acted Within Its Discretion when It Rejected Gilbert's Unauthorized Attempt on Remand to Reopen the Record for New Fact Finding.

The district court gave Gilbert an unfettered opportunity prior to *Gilbert I* to present evidence to prove that its fees were reasonable. Fishman even agreed to an

extension that gave Gilbert extra time—almost two months—to collect and present

such evidence.  JA80-82.  Yet, Gilbert presented none.  JA453.  Contrary to

Gilbert's argument, the district court did not abuse its discretion in rejecting

Gilbert's unauthorized attempt to reopen the record on remand.

### A.    The District Court Gave Gilbert a Fair Opportunity to Present Evidence Regarding the Reasonableness of Its Fees.

Gilbert cannot dispute that the district court gave the firm an adequate

opportunity to present evidence regarding the reasonableness of its fees.  The

mandate rule "'forecloses litigation of issues decided by the district court but

foregone on appeal or otherwise waived, for example because they were not raised

in the district court.'"  *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,

510 F.3d 474, 481 (4th Cir. 2007).  Before *Gilbert I*, Gilbert never challenged—

"either in the district court or in this Court"—the adequacy of its opportunity to

present evidence regarding the reasonableness of its hours and rates.  *Id.*  Gilbert

therefore waived the issue.  As this Court held in *Volvo*, "a remand proceeding is

not the occasion for raising new arguments or legal theories."  *Id*.

### B.    The District Court's Rejection of Gilbert's Unauthorized Submission of New Evidence on Remand was Within Its Broad Discretion.

Because Gilbert cannot dispute that it was given one unfettered opportunity

to present evidence regarding the reasonableness of its fees, it cannot establish the

district court abused its discretion by denying it a second bite at that apple.  Gilbert

contends that the district court "misperceives the effect of vacatur," yet Gilbert ignores the relevant cases about what a district court should do on remand. Gilbert Br. at 36.

Gilbert cites inapposite cases for the uncontroversial proposition that "a vacated judgment and the factual findings underlying it have no preclusive effect." *Id.* at 37 (citing cases). Gilbert then erroneously reasons that a district court on remand has no discretion and must "permit[]" parties "to offer additional evidence" because "the parties were left in the same position as they were before the judgment." *Id.*

The Supreme Court of the United States had held that "[o]n remand, the decision on whether to reopen the record should be left to the sound discretion of the trial court." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 551 (1983). A district court is not required to reopen the factual record unless this Court orders it to do so. As this Court held in *Glassman Construction Co. v. United States*, "had we intended for the district court to hear further evidence or make additional findings and conclusions we should have specifically ordered a partial new trial." 421 F.2d 212, 215 (4th Cir. 1970); *Grubb v. United States*, No. 90-3054, 1991 WL 62499, at *1 (4th Cir. Apr. 25, 1991) (whether to reopen record is left to the district judge's discretion); *see also Int'l Star Class Yacht Racing Assoc.*, 146 F.3d at 73

53

("The decision whether to hear additional evidence on remand is within the sound discretion of the trial court judge.").

This Court has discouraged district courts from reopening the factual record when it remands for consideration of legal issues. "When an appeals court vacates a judgment with narrowing instructions which direct the district court to consider certain issues, the district court does not have a mandate to reconsider other issues except in extraordinary circumstances." *United States v. Lynn*, No. 93-5339, 1993 WL 460716, at *1 (4th Cir. Nov. 9, 1993).

In this case, the district court reasonably rejected Gilbert's unauthorized attempt to reopen the record. This Court instructed the district court "to consider the *County of Campbell* factors." *Gilbert I*, 636 F. App'x 171. It did not instruct the district court to take new evidence. *Id.* The district court's refusal to reopen the record is consistent with this Court's holding that "every litigant is entitled to one fair trial, not two." *Glassman Constr. Co.*, 421 F.2d at 215.

Allowing Gilbert a second chance to proffer new evidence "to supply omissions pointed out" by the district court "would have been unfair" to Fishman. *See id.* This unfairness was apparent under the district court's briefing order, which contemplated only legal argument and gave Fishman a mere seven days to respond to Gilbert's submission. JA474. Requiring Fishman to respond to an

54

entirely new factual record in seven days would have denied him "an adequate opportunity to analyze" Gilbert's submission.  JA748 n.11.

Moreover, the district court was well within its discretion because Gilbert could have submitted the belatedly proffered evidence—affidavits from a current Gilbert attorney and new purported experts—while the record was open.  *See, e.g., Bakalar v. Vavra*, 851 F. Supp. 2d 489, 494 (S.D.N.Y. 2011) (refusing to reopen the record on remand because "Defendants had ample opportunity to support their claims with expert testimony" and "they failed to exercise diligence").

### C.   The District Court Correctly Determined that a Gilbert Attorney's Legal Argument Is Not a Binding Judicial Admission by Fishman.

Gilbert argued for the first time on remand that because Matteis, *while a partner at Gilbert*, previously argued that certain hours and fees were reasonable as part of a Lanham Act fee petition seeking fees from Linglong and Al Dobowi, Fishman is barred from contesting those fees in this *dispute against Gilbert*, even though the district court disagreed and cut those hours substantially.  JA209-211. Gilbert's argument (at 32-36) is baseless for four reasons.

*First*, Gilbert waived this argument by failing to raise it before *Gilbert I*. "[A] remand proceeding is not the occasion for raising new arguments or legal theories."  *Volvo*, 510 F.3d at 481.  "[F]ailure to contend that an opposing party's admission barred entry of conflicting evidence is a waiver of the argument that the

issue was conclusively settled." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988).  Gilbert waived any right to rely upon a judicial admission because it "had ample opportunity to raise the alleged admission but failed to do so." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 348 (4th Cir. 2014); *see also Shell v. Parrish*, 448 F.2d 528, 530 (6th Cir. 1971) (holding that "it is necessary that a party offer in evidence the original or superseded pleading if he desires to make use of an admission therein contained").

*Second,* a statement that certain fees are reasonable is a legal argument that cannot qualify as a judicial admission.  JA744 n.8.  "It is well-established that judicial admissions are limited to statements of fact, and do not include an attorney's legal theories, arguments, or conclusions."  *Craft v. Covey*, No. 5:10-cv-246, 2011 WL 923487, at *4 (D. Vt. Mar. 4, 2011).

> When counsel speaks of legal principles as he conceives them and which he thinks applicable, he makes no judicial admission and sets up no estoppel which would prevent the court from applying to the facts disclosed by the proof, the proper legal principles as the Court understands them.

*New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963); *see also McDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997) ("Since [defendant's] counsel's statements dealt with legal conclusions (*i.e.,* whether [plaintiff] was negligent and whether he caused the accident), they do not … constitute binding judicial admissions.").

56

Arguments about how the law should apply to facts "is not something that can be judicially admitted (or denied); rather it is entirely the province of the district court to decide the issue." *Everett v. Pitt Cty. Bd. of Educ.*, 788 F.3d 132, 141 (4th Cir. 2015). Thus, "the award of reasonable attorney fees is considered to present questions of law to be determined by the court, not a factual dispute to be submitted to a jury." *Fed. Deposit Ins. Corp. v. Aroneck*, 643 F.2d 164, 166 (4th Cir. 1981).[5]

*Third*, judicial admissions operate as "stipulations by a party" that "release the opposing party from its burden to prove" certain facts in a particular dispute. *Minter*, 762 F.3d at 347. For this reason, "judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made." *Univ. Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991); *see also Casa Del Caffe Vergnano S.P.A. v. Italflavors, LLC*, 816 F.3d 1208, 1213 (9th

---

[5] Gilbert contends (at 34) that Matteis' argument should be deemed a judicial admission because it was repeated in a declaration. The character of the statement determines whether it is factual or legal, not where it is made. *See New Amsterdam*, 323 F.2d at 24. Courts routinely refuse to treat legal arguments as facts merely because they appear in a declaration. *See, e.g., Rueda v. Clarke*, No. 1:14cv699, 2015 WL 1236226, at *5 n.5 (E.D. Va. Mar. 17, 2015) (rejecting affidavits that "'state a legal standard or draw a legal conclusion by applying law to the facts' which generally is inadmissible"). Gilbert also misplaces reliance (at 35) upon three cases to argue that the reasonableness of fees is a question of fact: *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991); *Tanenbaum v. Agri-Capital, Inc.*, 885 F.2d 464, 471 (8th Cir. 1989); and *Jerry Parks Equip. Co. v. Southeast Equip. Co.*, 817 F.2d 340, 344 (5th Cir. 1987). These cases hold that a court must determine "reasonable fees" based on legal factors, which is precisely the kind of ultimate legal conclusion that this Court held could not be the subject of a judicial admission in *Everett*, 788 F.3d at 141.

Cir. 2016). This dispute technically is part of the same "case" only because the district court is deciding this fee dispute under its ancillary jurisdiction. In all relevant respects, this is a different controversy between different adversaries.

*Fourth,* even if the Matteis' arguments could be deemed judicial admissions, the district court had discretion to relieve Fishman of them because Matteis was a Gilbert partner in addition to Fishman's attorney at the time, and the district court rejected Matteis' arguments. Gilbert argues (at 34) that "there is no requirement that a court must ultimately rule in the admitting party's favor on the point at issue." But "a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue…." *New Amsterdam*, 323 F.2d at 24. The district court was well within its discretion to refuse to enforce a judicial admission "because Matteis' arguments were rejected at the trademark fee petition stage." JA744 n.8.

## REQUEST FOR DECISION ON THE BRIEFS

Pursuant to Federal Rule of Appellate Procedure 34 and Local Rule 34(e), Appellees ask this Court to decide this appeal of a fee dispute on the briefs, as in *Beasley v. Red Rock Financial Services, LLC*, 583 F. App'x 138 (4th Cir. 2014), and *Randle v. H & P Capital, Inc.*, 513 F. App'x 282 (2013). This Court has "characterized appeals of attorney's fee awards as 'one of the least socially productive types of litigation imaginable'" and held that they should not become a

second major litigation. *Carroll,* 53 F.3d at 628. Gilbert falls far short of establishing that the district court abused its broad discretion, particularly given Gilbert's failure to timely present any evidence regarding the reasonableness of its claimed fees.

## **CONCLUSION**

For the reasons stated above, Appellees Jordan Fishman and his companies request that this Court affirm the decision of the district court below.

Dated: July 5, 2016                  Respectfully submitted,

                                     /s/ William E. Copley
                                     William E. Copley
                                     August J. Matteis, Jr.
                                     WEISBROD MATTEIS & COPLEY PLLC
                                     1200 New Hampshire Ave., N.W., Suite 600
                                     Washington, D.C. 20036
                                     Telephone: (202) 499-7900
                                     Facsimile: (202) 478-1795
                                     wcopley@wmclaw.com

                                     *Attorneys for Appellees Tire Engineering &*
                                     *Distribution, LLC, Jordan Fishman, and*
                                     *Bearcat Tire A.R.L., and BCATCO A.R.L.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R.

App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 13,990

words, excluding the parts of the brief exempted by Fed. R. App. P.

32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.

R. App. P. 32(a)(5) and the type style requirements of Fed. R. App.

P. 32(a)(6) because this brief has been prepared in a proportionally

spaced typeface using MS WORD 2010 in Times New Roman,

font size 14.

<u>/s/ William E. Copley</u>
William E. Copley
August J. Matteis, Jr.
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Ave., N.W., Suite 600
Washington, D.C.  20036
Telephone: (202) 499-7900
Facsimile: (202) 478-1795
wcopley@wmclaw.com

*Attorneys for Appellees Tire Engineering &*
*Distribution, LLC, Jordan Fishman, and*
*Bearcat Tire A.R.L., and BCATCO A.R.L.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 5, 2016, I electronically filed the foregoing Brief with the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system, thereby serving all persons required to be served, listed below.

Richard Daniel Shore
GILBERT, LLP
Suite 700
1100 New York Avenue, N.W.
Washington, D.C. 20005
(202) 772-2317
shorer@gotofirm.com

/s/ William E. Copley
William E. Copley
August J. Matteis, Jr.
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Ave., N.W., Suite 600
Washington, D.C.  20036
Telephone: (202) 499-7900
Facsimile: (202) 478-1795
wcopley@wmclaw.com

*Attorneys for Appellees Tire Engineering &*
*Distribution, LLC, Jordan Fishman, and*
*Bearcat Tire A.R.L., and BCATCO A.R.L.*

61